No. 04-385C
(Senior Judge Futey)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

INFORMATION SYSTEMS &
NETWORKS CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# APPENDIX, VOLUME NO. ONE, DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0290
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

GREGORY T. ALLEN
Trial Attorney
Defense Contract
Management Agency
Manassas, Virginia

July 9, 2004

# Index to Appendix


| | Page |
|---|---|
| ISN's March 6, 2003 Motion in Limine regarding Fixed Price Contracts (Fed. Cl. No. 98-663C) . . . . . . . . | 1 |
| ISN's March 6, 2003 Motion In Limine regarding PPA Interest (Fed. Cl. No. 98-663C) . . . . . . . . . . . . | 7 |
| May 14, 2003 Order (Fed. Cl. No. 98-663C) . . . . . . . . . . | 18 |
| November 5, 2003 Trial transcript (Fed. Cl. No. 98-663C) . . . . . . . . . . . . . . . . . . | 20 |
| ISN's June 10, 2003 claim for state tax costs based upon fixed-price contracts (w/o exhibits) . . . . . . . | 23 |
| ISN's June 11, 2003 claim for state tax costs based upon loss of profit on flexibly priced contracts . . . | 29 |
| August 12, 2003 letter from ACO requesting documentation of ISN's claim for state tax costs for its fiscal years 1985-2000 based upon negotiated fixed-price contracts . . . . . . . . . . | 34 |
| August 12, 2003 letter from ACO requesting documentation of ISN's claim for state tax costs for its fiscal years 1985-2000 based upon loss of profit on cost-reimbursement and time & materials contracts . . . . . . . . . . . . . . | 36 |
| December 16, 2003 letter from ACO notifying ISN that he would issue a decision on the two claims by March 6, 2003, and renewing his request for supporting documentation for ISN's claims . . . . . . . . | 37 |
| January 20, 2004 letter from ISN providing list of all of ISN's cost-plus-fixed-fee, time & materials, and fixed-price contracts . . . . . . . . . . | 39 |
| February 2, 2004 letter from ACO requesting additional supporting documentation for ISN's claims . . . . . . . . . . . . . . . . . . . . . | 63 |
| February 5, 2004 letter from ISN informing ACO that ISN's claims were not based upon any specific contract terms . . . . . . . . . . . . . . . . . | 65 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | No. 98-663C (Judge Futey) |
| THE UNITED STATES OF AMERICA | : | |
| Defendant. | : | |

**MOTION IN LIMINE TO ALLOW EVIDENCE ON REIMBURSEMENT OF STATE INCOME TAXES PAID ON INCOME DERIVED FROM PLAINTIFF'S NEGOTIATED FIXED-PRICE CONTRACTS[1]**

The plaintiff, Information Systems & Networks Corporation ("plaintiff" or "ISN") by its undersigned attorneys hereby moves the Court for an order allowing it to introduce evidence on reimbursement of state income taxes paid to the ISN stockholder on income derived from ISN's negotiated fixed-price contracts.

As is shown by the attached memorandum, all of ISN's fixed-price contracts were negotiated Federal Government contracts, which included ISN's state tax costs as a component of its indirect cost rates. Therefore, for purposes of claiming state tax cost reimbursement, the fixed-priced contracts are no

[1] Plaintiff's trial exhibit 99, Part E-1 and Part E-3, sets forth the percentage of negotiated fixed-price contracts included in the claim.

different than the cost-reimbursement and time-and-materials contracts. Accordingly, state tax cost incurred on revenue from ISN's fixed-price contracts for each of the fiscal years in question should be allowed.

A memorandum in support of this motion is attached.

DATED: March 6th, 2003.

Respectfully submitted,

Singer & Associates, P.C.

By: ____________________

NORMAN H. SINGER, ESQUIRE
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
T. (301)469-0400
F. (301)469-0403

Counsel for the Plaintiff


2

COPY

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | No. 98-663C<br>(Judge Futey) |

**MEMORANDUM IN SUPPORT OF**
**MOTION IN LIMINE TO ALLOW REIMBURSEMENT OF STATE INCOME TAXES PAID ON INCOME DERIVED FROM PLAINTIFF'S FIXED-PRICE CONTRACTS**

## I. Introduction

On November 30, 2000, the Court ruled as a matter of law that state taxes claimed by ISN for FY 1985-1991 were allowable costs to which ISN was entitled to be reimbursed. Information Systems & Networks Corporation v. United States, 48 Fed. Cl. 265 (2000).[1] The Opinion resulted from the contracting officer's denial of plaintiff's claim for reimbursement of state income taxes paid on income derived from Government cost-reimbursement and time-and-materials contracts. In holding in favor of ISN, the Court concluded that state tax expenditures incurred by ISN on its business activities related to its cost-

[1] The Court has subsequently allowed ISN to claim its state tax costs for FY 1992-2000 by granting ISN's Motion to Amend Complaint.

reimbursements contracts, including time-and-materials contracts, with the defendant, the United States ("defendant") were reimbursable under the Federal Acquisition Regulation ("FAR").

For purposes of liability, the plaintiff did not raise the claim underlying this motion. However, regarding damages consisting of state tax cost reimbursement, there is no difference between a negotiated Federal Government fixed-price contract and a cost-reimbursement or time-and-materials contract. Thus, for purposes of its state tax reimbursement damages, this motion asks the Court to allow evidence of state tax costs on revenue from negotiated fixed-price contracts as well.

## II. The Negotiated Fixed-Price Contract Constitutes a Form of Cost Reimbursement Contract

During the 16 years in question, the defendant entered into various contractual relationships with ISN depending upon the defendant's needs. Generally, there were two basic categories of contracts awarded ISN: "Fixed-priced" and "flexibly priced contracts". Under the firm, fixed-price arrangement, there were no negotiations regarding the price of the contract. The Government established the price and ISN was required to perform at that price. In the other category,

flexibly priced contracts, there were cost reimbursement[2], time-and-materials (T&M) and various negotiated fixed-price contracts.[3]

In connection with the negotiated fixed-price contracts, ISN was required to submit cost and pricing data to the Government which was then reviewed for adequacy and reasonableness. This Cost and Pricing Data included ISN's indirect costs rates.[4] The DCAA would uniformly disallow the indirect cost rate which included the state tax costs in the negotiated firm fixed-price contract. Thus, the revenue from the negotiated fixed-price contract, while creating a state tax liability to the ISN stockholder, was not paid for by the negotiated fixed-price contract. Thus, ISN's entitlement to claim state tax cost reimbursement on the firm fixed-price contract is reasonable.

## III. Conclusion

For the foregoing reasons, ISN requests this Court to grant its Motion in Limine to Allow Evidence on Reimbursement of

---

2 Cost reimbursement can consist of a cost plus fixed-fee (CPFF), cost plus incentive-fee (CPIF), cost plus award-fee (CPAF).

3 The negotiated fixed price consists of fixed-price with economic price adjustment, fixed-price incentive (FPI), and firm fixed-price level of effort.

4 The indirect cost rates are those rates which are reviewed and approved by DCAA. The indirect cost rates included state tax costs.

State Income Taxes Paid on Income Derived from Negotiated Firm Fixed-Price Contracts.

DATED: March 6th, 2003.

Respectfully submitted,

Singer & Associates, P.C.

By: [signature]

NORMAN H. SINGER, ESQUIRE
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
T. (301)469-0400
F. (301)469-0403

Counsel for the Plaintiff

COPY

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | No. 98-663C (Judge Futey) |
| THE UNITED STATES OF AMERICA | : | |
| Defendant. | : | |

**MOTION IN LIMINE TO ALLOW EVIDENCE ON PLAINTIFF'S ENTITLEMENT TO PROMPT PAYMENT ACT INTEREST**

The plaintiff, Information Systems & Networks Corporation ("plaintiff" or "ISN"), by its undersigned attorneys, hereby moves the Court for an order allowing it to introduce evidence on its entitlement to Prompt Payment Act interest on certain portions of ISN's state tax reimbursement claim.

As is shown by the attached memorandum, ISN will offer evidence that its invoices to defendant, the United States ("defendant"), were not paid in full because the defendant withheld a portion of the invoices which covered the state tax cost. In addition, ISN will introduce evidence that the defendant required it to submit invoices which excluded state tax costs, but which for purposes of Prompt Payment Act interest, consists of a failure to pay the invoice timely.

A memorandum in support of this motion is attached.

DATED: March 12, 2003.

Respectfully submitted,

Singer & Associates, P.C.

By: ______________________

NORMAN H. SINGER, ESQUIRE
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
T. (301)469-0400
F. (301)469-0403

Counsel for the Plaintiff

COPY

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | No. 98-663C (Judge Futey) |
| THE UNITED STATES OF AMERICA | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO ALLOW EVIDENCE ON PLAINTIFF'S ENTITLEMENT TO PROMPT PAYMENT ACT INTEREST**

## I. Introduction

On November 30, 2000, the Court ruled as a matter of law that state taxes claimed by ISN for FY 1985-1991 were allowable costs to which ISN was entitled to be reimbursed. Information Systems & Networks Corporation v. United States, 48 Fed. Cl. 265 (2000).[1] The Opinion grants ISN the right to be reimbursed the amount of state tax cost on ISN revenue paid or advanced to its stockholder. The Opinion holds that the defendant is obligated to reimburse ISN for the necessary expenditure ISN makes and has made to ensure the payment of its "incurred state income taxes" (Opinion at 12 [quotations

[1] The Court has subsequently allowed ISN to claim its state tax costs for FY 1992-2000 by granting ISN's Motion to Amend Complaint.

added]).

ISN has previously argued its entitlement to interest on the amount of its state tax reimbursement claim under the Contract Disputes Act ("CDA"), which accrues from the date the cognizant contracting officer received ISN's CDA claim. See plaintiff's Motion for Summary Judgment on Damages dated November 15, 2001 (pp. 25-27). It is axiomatic that it is the intent of the CDA that the submission of a written claim to a contracting officer under § 6(a) of the CDA starts the "interest clock running" and that the "certification requirement" in § 6(c) was intended only as a prerequisite to payment. ISN has argued that a valid "claim" under the CDA was appropriately filed with the contracting officer and meets the requirements of CDA as interpreted by the Court of Appeals for the Federal Circuit.[2]

ISN claims that its letters to the administrative contracting office ("CO") dated September 18, 1995 (for years 1985-1990) and March 13, 1998 (for years 1985-1996), requesting the CO to issue a final decision on state tax allowability for FY's 1985-1996, along with other correspondence from ISN, meets the requirements necessary to constitute a valid "claim" under

---

2 The question of ISN's entitlement to CDA interest is not the subject of this Motion in Limine. ISN's entitlement has been sufficiently briefed that a motion in limine on that issue would be duplicative.

the CDA. Under the CDA, as interpreted by the Court of Appeals for the Federal Circuit in Reflectone, Inc. v Dalton, 60 F3d 1572, 1575 (Fed. Cir. 1995) (en banc), a non-routine submission must contain three elements: (i) a written demand; (ii) seeking as a matter right; (iii) a sum certain. Relectone holds that both a "termination settlement proposal" and "request for equitable adjustment" are non-routine submissions, and if they meet the three-prong test, are valid "claims". Reflectone, 60 F3d at 1577. See also James M. Ellett Construction Co. v United States, 94 F3d 1537 (Fed. Cir. 1996).[3]

What is at issue in this Motion in Limine is whether ISN can introduce evidence of its entitlement to Prompt Payment Act interest for the relevant periods of time prior to when CDA interest begins to accrue.

## II. Prompt Payment Act Interest

The Prompt Payment Act ("PPA"), 31 U.S.C. §§ 3901-3907, generally requires the defendant to pay a business concern, such as ISN, from whom services are acquired within 45 days after receipt of a proper invoice.[4] If the payment is not made within the prescribed time, the defendant must pay interest

---

[3] The CDA claim for FY 1997-2000 commenced when it filed its CDA claim on or about July 1, 2002.

[4] Request for interim financing, such as request for progress payments, and interim billings on cost type contracts are not considered invoices for purposes of the Act. Those types of billings are not at issue here.

to the contractor commencing from the 30th day after receipt of the invoice. Interest will be paid at the same rate as applied to claims adjudicated under the CDA.

In relationship to CDA, the PPA states as follows:

(a) A claim for an interest penalty not paid under this Chapter may be filed under Section 6 of the Contract Disputes Act of 1978 (41 U.S.C. § 605).

(b) (1) An interest penalty under this Chapter does not continue to accrue - (A) after a claim for penalty is filed under the Contract Disputes Act of 1978 (41 U.S.C. § 601 et. seq.); or (B) for more than one year.

(2) Paragraph (1) of this subsection does not prevent an interest penalty from accruing under Section 12 of the Contract Disputes Act of 1978 (41 U.S.C. § 611) after a penalty stops accruing under this Chapter. A penalty accruing under Section 12 may accrue on an unpaid contract payment and on the unpaid penalty under this Chapter.

(c) Except as provided in Section 3904 of this Title, this Chapter does not require an interest penalty on a payment that is not made because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract. A claim related to the dispute, and interest payable for the period during which the dispute is being resolved, is subject to the Contract Disputes Act of 1978 (41 U.S.C. § 601 et. seq.).

31 U.S.C. § 3907. (for emphasis)

This statute makes it clear that PPA provides statutory authority for the waiver of sovereign immunity with respect to an interest claim against the defendant before entitlement to CDA interest. See Library of Congress v. Shaw, 478 U.S. 310, 106 S. Ct. 2957, 2962 92 L. Ed. 2d. 250 (1986).

This type of interest entitlement is also authorized by the Federal Acquisition Regulations ("FAR"). FAR 32.614-2 entitled "Interest Credits" allows an equitable interest credit to be applied

> [W]hen the responsible official determines that the Government has unduly delayed payments to the contractor on the same contract at some time during the period to which the interest charge applied, provided an interest penalty was not paid for such late payment.
>
> FAR 32.614-2(a)(3).

ISN's entitlement to PPA interest accrues until ISN's entitlement to interest under the CDA. ISN's PPA claim is divided into two separate and distinct components: First, invoices submitted by ISN to the defendant in 1985 and 1986 which were partially paid where the defendant withheld state tax cost amounts within compensation because DCAA considered state tax a personal expenditure in those invoices. Second, where ISN was required by the defendant to submit invoices which carved out the ISN state tax cost and therefore were less than what ISN would have normally invoiced. Each of the components of ISN's PPA claim will now be addressed.

## III. <u>The PPA Interest Claim on Unpaid Invoices</u>

This Motion in Limine seeks the permission of the Court for ISN to introduce invoices submitted to the defendant in 1985 and 1986 which were only partially paid. ISN will then present evidence that the withheld amounts represented its state

tax cost for each of those years. ISN claims that it is entitled to PPA interest beginning 30 days after the date of each invoice until the filing of its CDA claim 10 years later, after the contracting officer issued its decision, which covers the state tax cost amounts for each of those years.

IV. <u>PPA Interest Claim on Invoices After 1986</u>

If this Motion in Limine is granted, ISN will present evidence that its proposed provisional cost proposal for FY 1986 requested a 20% G&A rate for future years. ISN will prove that the defendant arbitrarily reduced the requested G&A rate to 16% because of two issues: The claim of excessive executive compensation which included the unallowable state tax costs wherever the state tax costs were personal expenditures. As a result of the defendant's action, ISN's invoices, beginning in 1987, would be reduced by an amount that DCAA claimed was related to executive compensation and state income tax. ISN intends to present evidence as to the amount of these carve outs for state tax cost from its invoices. In effect, the carve out represents a withholding of a payment of an invoice under the PPA which ISN is entitled to be paid. <u>See</u>, Affidavit of Roma Malkani in support of this Motion.

V. <u>Conclusion</u>

For the foregoing reasons, ISN requests this Court to grant its Motion in Limine to Allow Introduction of Evidence on

Plaintiff's Entitlement to Prompt Payment Act Interest on its State Tax Reimbursement Claim.

DATED: March 18, 2003.

Respectfully submitted,

Singer & Associates, P.C.

By: [signature]

NORMAN H. SINGER, ESQUIRE
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
T. (301)469-0400
F. (301)469-0403

Counsel for the Plaintiff

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | No. 98-663C<br>(Judge Futey) |

**AFFIDAVIT OF ROMA MALKANI**

Roma Malkani, under penalty of perjury, submits the following affidavit in support of the Motion in Limine to Allow Evidence on Plaintiff's Entitlement to Prompt Payment Act Interest filed by Plaintiff, Information Systems & Networks Corporation ("ISN" or "plaintiff"), and in support thereof, states as follows:

1. I make this Declaration upon personal knowledge.

2. Since 1980, I have been ISN's President and CEO.

3. I have reviewed the Motion in Limine to Allow Evidence on Plaintiff's Entitlement to Prompt Payment Act Interest ("the Motion"). The facts set forth in the Motion are true to the best of my knowledge.

4. I am able to verify on my own personal knowledge that ISN is in possession of invoices submitted to the defendant in

1985 and 1986 which were only partially paid and that the amounts withheld from those invoices represented both executive compensation and state tax cost for each of those years. In addition, I know of my own personal knowledge that beginning in 1987, ISN's invoices to the Government were reduced by an amount that DCAA claimed was related to executive compensation and state income tax. DCAA by letter directed ISN to reduce its billing rates equivalent to the amount that was being reduced in the partially paid previous invoices. Further these reductions continued to be for executive compensation since DCAA assumed that state tax was a personal expenditure of the stockholder.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury and under the laws of the United States of America, the foregoing is true and correct along with the factual recitals set forth in the Motion.

[signature]
ROMA MALKANI

Executed on March 12th, 2003.

# In the United States Court of Federal Claims

No. 98-663C

(Filed May 14, 2003)

2003 MAY 15 A 8:42
CIVIL DIVISION/OHI

FILED
MAY 1 4 2003
U.S. COURT OF FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * * * * * * * * * *

INFORMATION SYSTEMS & NETWORKS CORPORATION, *

Plaintiff, *

v. *

THE UNITED STATES, *

Defendant. *

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER

Pursuant to the pretrial conference held on May 13, 2003, the following is hereby ordered:

1. Plaintiff's Motion In Limine To Allow Evidence On An Accrual-Based Claim, filed November 13, 2002, is GRANTED. Defendant's Cross-Motion To Require That Plaintiff Establish Its Damages Based Upon Accrual Damages Incurred, filed January 31, 2003, is DENIED.

2. Plaintiff's Motion In Limine To Allow Introduction Of Pro-Forma Tax Returns, filed March 7, 2003, is GRANTED.

3. Plaintiff's Motion In Limine To Allow Evidence On Reimbursement Of State Income Taxes Paid On Income Derived From Plaintiff's Negotiated Fixed-Price Contracts, filed March 7, 2003, is DENIED.

4. Plaintiff's Motion In Limine To Allow Evidence On Plaintiff's Entitlement To Prompt Payment Act Interest, filed March 13, 2003, is GRANTED.

5. Defendant's Motion For Partial Dismissal To Preclude Plaintiff From Establishing Damages For The Years 1985 and 1987-91 Based Upon Plaintiff's Failure To Produce Documents Necessary To Compute Plaintiff's Damages For Those Years, filed April 30, 2003, is HELD IN ABEYANCE. During the pretrial conference, plaintiff's counsel

stated that he would seek copies of said documents from the Internal Revenue Service. This motion will be ruled on before trial, pending plaintiff's timely remittance of said documents to defendant.

6. Trial in this case will commence on Monday, November 3, 2003, at 10:00 a.m. Five working days have been reserved for these proceedings. The trial will be held in the National Courts Building, 717 Madison Place, N.W., Washington D.C. The exact location of the courtroom will be posted on the bulletin board in the lobby.

7. It is expected that counsel will have all exhibits pre-marked and identified on a separate index sheet. All proposed exhibits must be identified and made available to opposing counsel prior to trial. At the pretrial conference both parties agreed to cooperate to create a joint stipulated exhibits list. Exhibits which have not been disclosed to opposing counsel prior to trial will not be received into evidence at trial absent extraordinary circumstances. Counsel will not be permitted to produce at trial a witness who has not been identified to opposing counsel prior to trial.

8. Any party intending to present substantive evidence by way of deposition testimony, other than as provided by Federal Rules of Evidence 801(d), shall serve and file a separate motion for leave to file the transcript of this testimony by Thursday, October 3, 2003. The motion shall show cause why the deposition testimony should be admitted and identify specifically the portions of the transcript the party intends to use at trial. If the motion is granted, only those portions of the transcript may be filed.

IT IS SO ORDERED.

BOHDAN A. FUTEY
Judge

Q Do you recall testifying regarding your W-2s and how those W-2s embodied the payments that you felt were due under the shareholder agreement?

A Oh, yes, I referred to that. Not to shareholder but to the ACO agreement, the administrative contracting officer's agreement, the government, ACO.

Q Are you speaking of an agreement you had with Mr. Simon, Charlie Simon?

A Yes.

Q And that was an agreement regarding your compensation, correct?

A Compensation which included state tax.

Q Is it my understanding of your testimony here today that you do not base your entitlement to receive reimbursement for state taxes upon a shareholder agreement between you and ISN, but rather upon an agreement between yourself and Mr. Charlie Simon?

A Oh, that's between me and ISN. The other one is between the corporation and the government. I don't know which you're -- they are two different agreements.

Q What is the basis of the -- what do you believe is the basis for ISN's obligation to reimburse

Q So you have a specific recollection sitting here today about a conversation you had back in the 1985 time frame as to this specific $9 deduction that was per the DCAA auditor?

A You know, what you use are not exactly right, but --

Q The reason I ask is that you have been saying it's been 20 years ago, it's hard to remember things, but you seem to have a very clear memory of this conversation.

A Um-hmm, um-hmm, very clear.

Q And was there a deduction because there was a dispute between you and DCAA?

A Yes.

Q Do you recall what the dispute was about?

A Yes.

Q What was the dispute about?

A Compensation.

Q So DCAA and ISN had a dispute about the amount of compensation?

A Because of the inclusion of state taxes, right.

Q And so they were not paying the full interim voucher because of that dispute, correct?

A They were reducing it by an amount in excess

of the state tax, right. That is correct.

Q If you could turn to the next advice of payment that appears in Exhibit 184, please, Plaintiff's Exhibit 184, and it's a -- so we can recognize it for the record, there is a total amount that appears at the top right corner of $8,301.86. Do you see that?

A Yes.

Q Do you have any knowledge as to the actual person who prepared this document?

A Same answer as before.

Q Do you have a specific recollection as to having a conversation with somebody within the government about what the notation means on this advice of payment?

A I didn't, but my accounting staff did.

Q Your accounting staff did?

A Yeah, that's how I know.

Q Who would be your accounting staff?

A Eighteen years ago, I don't remember the names.

Q So sitting here today you don't have a specific recollection as to -- you don't have firsthand knowledge as to what this notation means then, do you? You're relying upon a statement made by