*************************************************************

**UNITED STATES COURT OF FEDERAL CLAIMS**

*************************************************************

**04-385C**
**(Judge Block)**

**INFORMATION SYSTEMS & NETWORKS CORPORATION,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

*************************************************************

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE**

**ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

*************************************************************

**Norman H. Singer, Esquire**
**Benjamin M. Kahrl, Esquire (of counsel)**
**Singer & Associates, P.C.**
**10411 Motor City Drive**
**Suite 725**
**Bethesda, Maryland 20817**
**(301) 469-0400**

**Attorneys for Plaintiff**

# TABLE OF CONTENTS


TABLE OF CITATIONS .......................................................................................... 3

QUESTIONS PRESENTED .................................................................................... 5

STATEMENT OF THE CASE ............................................................................... 6

A. Statement of Facts ……………………………………………………….……. 6

B. Summary of Argument ………………………………………………………… 10

LEGAL ARGUMENT………………………… ............................................................ 11

A. This Court Has Subject Matter Jurisdiction Over This Dispute…..…………………..…11

B. This Case Should Be Stayed Pending The Results Of The Government's Appeal Of Fed. Cl. No. 98-663C For Judicial Expediency….……….17

C. Standard For Summary Judgment…………………………………………….....18

D. Whether ISN Is Entitled To Payment Of State Tax Amounts Attributable To Its Fixed-Price Contracts Is A Combined Issue Of Law And Material Fact……………………………………………………...19

E. ISN's Claim For Additional Profit Based Upon The Failure To Reimburse State Tax Costs Does Not Constitute A "Cost-Plus-A-Percentage-Of Cost" Contract……………………………………….21

F. The Determination On PPA Interest In The Related Case Is Not Binding…………..24

G. There Are Many Genuine Issues Of Material Fact At This Stage Of The Litigation Concerning ISN's Claim For PPA Interest. ………………………………25

H. There Is No Evidence To Suggest That ISN's Claims Are Barred By The Doctrine Of Laches………………………………………………………………….27

CONCLUSION …………………………………………………………………………...28

CERTIFICATE OF SERVICE …………………………………………………………29

# TABLE OF CITATIONS

## CASE CITATIONS


Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ……...…………………………….... 18-19

Bromley Contracting Co. v. United States, 794 F.2d 669 (1986)……………………………… 20

Brundage v. United States, 205 Ct. Cl. 502, 504 F.2d 1382 (1989) ........................................... 27

Cornetta v. United States, 851 F.2d 1372 (Fed Cir. 1988)………………………………… 27-28

First Nat'l Elec. Laboratories, Inc. v. United States, 148 Ct. Cl. 308,
180 F. Supp. 337 (1960) …...……………………………………………………………21

Gava v. United States, 225 Cl. Ct. 676 (1980)............................................................................. 27

Girling Health Sys., Inc. v. United States, 949 F.2d 1145 (Fed. Cir. 1991) …………………….16

Information Sys. and Networks Corp. v. United States, 48 Fed. Cl. 265 (2004)..................... 7, 26

Khan v. United States, 201 F.3d 1375 (Fed. Cir. 2000)............................................................ 11

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)................................................................ 13

Mients v. United States, 50 Fed. Cl. 665 (2001) ……………………...…………….....11, 13-15

Mingus Constructors, Inc. v. United States, 812 F.2d 1387 (Fed. Cir. 1987) ……….…...……18

Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. 39 (1989)..........................................18-19

Reynolds v. Army and Air Force Exchange Service, 846 F.2d. 746 (1988)................................ 12

Sanders-Midwest, Inc. v. United States, 15 Cl. Ct. 345 (1988)................................................... 21

S.E.R., Jobs For Progress, Inc. v. United States, 759 F.2d 1 (Fed. Cir. 1985)............................. 27

Scheuer v. Rhodes, 416 U.S. 232 (1974) ..................................................................................... 12

Sterling Millwrights, Inc. v. United States, 26 Cl. Ct. 49 (1992) ................................................ 26

Tyler v. United States, 220 Ct. Cl. 387, 600 F.2d 786 (1979) ................................................27-28

Urban Data Sys., Inc. v. United States, 699 F.2d 1147 (Fed. Cir. 1983)..................................... 21

W.R. Cooper General Contractor, Inc. v. United States, 843 F.2d 1362 (Fed. Cir.)……..….12-14

STATUTES


10 U.S.C. § 2306 ……………………………………………………………………….21

28 U.S.C. § 1491 ……………………………………………………………………….11

31 U.S.C. § 3907(c)……………………………………………………………………….25


REGULATIONS


48 C.F.R. § 15.404-4(c)(4)(i)…………………………………………………………..22-23

48 C.F.R. § 16.202-1…………………………………………………………………………19

48 C.F.R. § 16.301-1…………………………………………………………………………22

48 C.F.R. § 16.301-2…………………………………………………………………………22

48 C.F.R. § 16.301-3……………………………………………………………………...22-23

48 C.F.R. § 16.306(c)…………………………………………………………………………22

48 C.F.R. § 16.601(a)(1)&(2)…………………………………………………………………23

48 C.F.R. § 16.601(b)(1)………………………………………………………………………23

48 C.F.R. § 31.205-41…………………………………………………………………………7

48 C.F.R. § 42.302……………………………………………………………………………….20

48 C.F.R. § 42.302(10)……………………………………………………………………..20

48 C.F.R. § 42.302(13)……………………………………………………………………..20


MISCELLANEOUS


RCFC 8(a) ……………………………………………………………………………….12

RCFC 12(b)(1)…………………………………………………………………………...12

RCFC 56(c)…………………………………………………………………………………18

*Black's Law Dictionary*……………………………………………………………….25

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **INFORMATION SYSTEMS & NETWORKS CORPORATION** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Case No. 04-385C** |
| | : | **(Judge Block)** |
| **UNITED STATES OF AMERICA** | : | |
| **Defendant** | : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Information Systems and Networks Corporation ("ISN"), by counsel, hereby submits this response to the motion to dismiss, or, in the alternative, motion for summary judgment filed by defendant, the United States of America ("defendant" or "the Government").

**ISSUES PRESENTED**

1. Whether this Court has subject matter jurisdiction over ISN's claims under the Tucker Act where ISN has plead a contractual relationship, the Government has notice of the exact contracts at issue, and there is no denial of the existence of the contractual relationship.

2. Whether this case should be stayed pending the result of the appeal in *Information Systems and Networks Corporation v. United States*, Fed. Cl. No. 98-663C, to the Court of Appeals for the Federal Circuit, No. 04-5151.

3. Whether summary judgment is appropriate against ISN's allegation for reimbursement of state tax costs on its negotiated fixed-price contracts where the Government's basis for refusing to reimburse such costs is its mistaken belief that a subchapter S-corporation may not recover state income tax costs paid by its shareholder on its corporate income.

4. Whether the allegation claiming additional profit on ISN's cost reimbursement and time-and-materials ("T&M") contracts to account for the additional profit ISN would have been paid had it been reimbursed its state tax costs on the revenue derived from such contracts presents a genuine issue of material fact.

5. Whether ISN is precluded from litigating its Prompt Payment Act ("PPA") claim on its negotiated fixed price contracts in this case only because the parties have previously litigated ISN's entitlement to PPA interest on its separate cost reimbursement and T&M contracts only in Fed. Cl. No. 98-663C.

6. Whether summary judgment is appropriate on ISN's PPA claim on the basis of the Government's unsupported assertion that the unpaid invoices were "in dispute" for the purposes of 31 U.S.C. § 3907(c), where there is no factual record for the Court to determine if there was such a dispute or the basis or legitimacy of the alleged dispute.

7. Whether summary judgment is appropriate against ISN's claims set forth in the Complaint on the basis of the Government's invocation of the doctrine of laches, where the Government has not offered any proof of any of the elements necessary for an affirmative defense of laches.

## STATEMENT OF THE CASE

### A. Statement of Relevant Facts.

ISN is a Maryland corporation which has extensive experience in the field of computer/telecommunication/security systems integration engineering. Compl., ¶ 6. At all times relevant to this case, ISN has been organized as a Subchapter S corporation. Compl, ¶ 2. For over 20 years, ISN has contracted with the various agencies of the Government, including the Department of Defense, to provide services and supplies. Compl., ¶ 6.

The factual background to this case is substantially similar to a related case recently decided by the Honorable Judge Bohdan Futey, Fed. Cl. No. 98-663C, and a more detailed rendition of the facts can be found in a reported decision from that case, *Information Systems and Networks Corp. v. United States*, 48 Fed. Cl. 265 (2000). In that case, Judge Futey held that ISN was entitled under the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 31.205-41, to recover costs associated with the payment by its sole shareholder of state taxes incurred by the corporation and reported as pass-through income on her tax return. Specifically, the Court held in its November 30, 2000 decision (the "November 30th Decision") that ISN could recover for the state tax its shareholder paid on revenue from its cost reimbursement and T&M contracts with the Government for the period FY 1985-1991. Compl., ¶ 2.[1]

The November 30th Decision did not resolve the issue of the quantum of damages, which was reserved for trial in the event the parties could not reach agreement on the amount of state tax costs owed for the years in question.

Pursuant to the November 30th Decision, and after the parties were unable to stipulate to the damages, ISN filed a motion for summary judgment on the issue of damages. Compl, ¶ 3. In that motion, ISN also argued that the Court should exercise jurisdiction over ISN's state tax reimbursement claim for FY 1992-2000 for tax state costs derived from revenue from ISN's cost reimbursement and T&M contracts with the Government. *Id.* The Court denied that motion on the basis that ISN had not filed a certified claim for FY 1992-2000 under the CDA. *Id.*

On July 1, 2002, ISN filed a Contract Disputes Act ("CDA") claim for its state tax costs arising from cost reimbursement and T&M contracts for FY 1992-2000. Compl., ¶ 4. When the Administrative Contracting Officer ("ACO") did not issue a final decision on that claim, ISN filed a Motion to Amend the Complaint to include its state tax cost claimed for FY 1992-2000,

[1] The Complaint was subsequently amended to also include FY 1992-2000, as detailed herein.

which was subsequently granted in an Order filed by Judge Futey on November 7, 2002. *Id.*; Pl. A. at 20.[2]

Soon thereafter, ISN filed a motion in Fed. Cl. No. 98-663C which is relevant to the issues in this case. On March 7, 2003, ISN filed a motion in limine to allow or include its claim for state income taxes paid on income derived from negotiated firm fixed price contracts. Def. A. at 1-6.[3] On May 14, 2003, Judge Futey ruled on several pending motions. Judge Futey denied the motion in limine to allow evidence on reimbursement of income derived from ISN's negotiated fixed-price contracts with the Government. Def. A. at 18. The May 14th Order indicated that the damages trial in Fed. Cl. No. 98-663C would commence on November 3, 2003. *Id.* at 19.

Following Judge Futey's May 14th Order, ISN filed two (2) certified Contract Disputes Act ("CDA") claims that form the precursor to the action pending before this Court. On June 10, 2003, ISN submitted a certified CDA claim seeking reimbursement for its state tax costs derived from income on its negotiated fixed-price contracts for FY 1985-2000, including PPA and CDA interest. Def. A. at 23. On June 11, 2003, ISN submitted a certified CDA claim for state tax costs incurred based on loss of profit from cost reimbursement and T&M contracts for FY 1985-2000, plus PPA and CDA interest. Def. A. at 29.

After no initial written decision was made by the ACO, ISN filed a complaint seeking review of the deemed denial of its June 10, 2003 and June 11, 2003 certified claims on August 21, 2003. Def. Brf. at 5, n.1; *Information Sys. and Networks Corp. v. United States*, Fed. Cl. No. 03-1962C. On September 17, 2003, ISN filed a notice of directly-related case in Judge Futey's

---

[2] "Pl. A" shall refer to pages in ISN's Appendix of Exhibits in Furtherance of its Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.
[3] "Def. A" shall refer to page numbers in Defendant's Appendix to its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

Court, as well as a "motion to transfer and suggestion for consolidation." Pl. A. at 21-27. ISN sought to have its claims in Fed. Cl. No. 03-1962C decided in the damage trial before Judge Futey, due to the close relationship to the claims pending in Fed. Cl. No. 98-663C. In a response filed October 2, 2003, the Government opposed both transfer and consolidation of the claims in Fed. Cl. No. 03-1962C. Pl. A. at 28-34. The Government did not claim that this Court lacked jurisdiction over ISN's new claims. In an Order filed October 16, 2003, the Court denied the motion to transfer and suggestion for consolidation. Pl. A. at 35. The parties proceeded to the November trial on the damages issues regarding only state tax costs for cost reimbursement and T&M contracts in Fed. Cl. No. 98-663C. However, because ISN had filed the complaint over the negotiated fixed-price contracts, *inter alia*, before the ACO had issued a written decision (and the Government had since indicated that such a decision would be forthcoming), ISN voluntarily dismissed Fed. Cl. No. 03-1962C on December 4, 2003, without prejudice. Def. Brf. at 5, n. 1.

On March 3, 2004, the ACO issued a final decision denying each of ISN's certified claims. Compl, Exh. A . ISN thereafter filed its Complaint in this action on March 11, 2004. Def. Brf. at 6. Count I of the Complaint seeks judgment for reimbursement of state tax costs incurred on ISN's negotiated fixed-price contracts for FY 1985-2000. Compl., ¶¶ 8-9. Count II seeks judgment for loss of profit due to the non-reimbursement of state tax costs derived from revenue from ISN's cost reimbursable and T&M contracts for FY 1985-2000. Compl., ¶¶ 9-10. Count III seeks an award of PPA interest. Compl., ¶¶ 10-11. Count IV asserts a claim for recovery of attorneys fees and expenses pursuant to the Equal Access to Judgment Act. Compl., ¶¶ 11-12. On July 9, 2004, the Government filed the pending Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

On July 21, 2004, after the conclusion of the damage trial, Judge Futey filed an Opinion in Fed. Cl. No. 98-663C. Pl. A. at 36-48. The Opinion set forth the amount of state tax costs due on ISN's revenue derived from its cost reimbursable and T&M contracts for FY 1985-2000. The Opinion also denied ISN's claim for PPA interest on the invoices from the cost reimbursement and T&M contracts. Upon entry of final judgment, the parties have each filed appeals to the United States Court of Appeals for the Federal Circuit. The appeals are still pending. Fed. Cir. No. 04-5151.

**B. Summary of Argument**

The Government's motion to dismiss or, in the alternative, for summary judgment, must be denied. Plaintiff has satisfied the pleading requirements of the Tucker Act, and the contractual relationship between the parties is well-established in this Court. As such, the Government's motion to dismiss for lack of subject matter jurisdiction is without merit.

This Court should consider staying this matter without consideration of the Government's alternative motion for summary judgment. The appeal pending in the Federal Circuit will either uphold or reverse Judge Futey's November 30th Decision on the entitlement of a Subchapter S corporation to reimbursement of state tax costs. The viability of ISN's claims in this case are largely dependent upon the results of the appeal, and the Court would best use its resources by entering a stay of this proceeding until resolution of the appeal.[4]

In the event that the Court considers the motion for summary judgment, that motion must also be denied. First, there are combined issues of law and material fact concerning ISN's entitlement to reimbursement for state tax costs derived from its negotiated fixed-price contracts,

---

[4] Arguably, this Court could decide this case on the allowability of state tax cost on negotiated fixed-price contracts <u>without</u> resort to Judge Futey's November 30th Opinion or the determination by the Federal Circuit. However, since the <u>only</u> basis of the Complaint is Judge Futey's November 30th Opinion, and since the Federal Circuit will decide the overall issue, any effort by this Court in this case at this time is unnecessary.

and the Government has offered no precedent that would invalidate the claim as a matter of law. Second, ISN's loss of profit claim would not convert its contracts into illegal cost-plus-a-percentage-of-cost contracts, and the relief requested in Count II is consistent with the FAR. Third, ISN's PPA claim with regard to its negotiated fixed-price contracts was not litigated in Fed. Cl. No. 98-663C, and the Government has not offered any evidence of a good faith dispute as to the amount of ISN's invoices or its contractual performance that would nullify ISN's PPA claim. Finally, the Government has not put forth any evidence to support its defense of laches. In fact, the evidence in the record on the pending motion indicates that ISN has been diligent in pursuing its claims. In the absence of a factual record, the Government cannot prevail on its motion for summary judgment, as there are numerous issues of material fact that cannot be resolved as a matter of law at this time.

## LEGAL ARGUMENT

### A. This Court Has Subject Matter Jurisdiction Over This Dispute.

The subject matter jurisdiction of this Court is set forth in the Tucker Act, 28 U.S.C. § 1491 (1982). Pursuant to the Tucker Act, an action may be maintained if it is "founded either upon the Constitution or any act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." As this Court has stated, "'[T]o invoke jurisdiction under the Tucker Act, a plaintiff must identify a contractual relationship, constitutional provision, statute or regulation that provides a substantive right to money damages.'" *Mients v. United States*, 50 Fed. Cl. 665, 671 (quoting *Khan v. United States*, 201 F.3d 1375, 1377 (Fed. Cir. 2000)).

When a party moves for dismissal pursuant to RCFC 12(b)(1) on the basis of lack of Tucker Act jurisdiction, the Court "must consider the facts alleged in the complaint to be correct." *W.R. Cooper General Contractor, Inc. v. United States*, 843 F.3d 1362, 1364 (Fed. Cir. 1988) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 1974)). "If these facts reveal any possible basis on which the non-movant might prevail, the motion must be denied." *Id.* Where a complaint alleges the existence of a contract, that allegation is sufficient to support Tucker Act jurisdiction if left unchallenged. *See Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 747 (Fed. Cir. 1988). If the motion to dismiss for lack of subject matter jurisdiction "challenges the truth of the jurisdictional facts alleged in the complaint, the court may consider relevant evidence in order to resolve the factual dispute." *Id.*

As a preliminary matter, the Government has not challenged the jurisdictional facts alleged in the complaint. The Government has not denied that it had contractual relationships with ISN. It has not challenged the existence of its contracts with ISN, or their legal sufficiency. The Government has not, and cannot, challenge any jurisdictional fact alleged in the Complaint, and has not offered any evidence in support of its motion to contradict ISN's factual allegations regarding jurisdiction. At best, the Government has challenged the legal sufficiency of ISN's allegation of jurisdiction, rather than their truth. However, even the cases relied on by the Government demonstrate that ISN has sufficiently satisfied the pleading standard for alleging jurisdiction in this Court.

Pursuant to RCFC 8(a), a claim need only contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the

relief the pleader seeks." This Court has previously held, "At the pleading stage, general factual allegations may suffice to meet this burden, for on a motion to dismiss the court 'presumes that general allegations embrace the specific facts that are necessary to support the claim.'" *Mients*, 50 Fed. Cl. at 668 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). As a result, ISN need only plead the existence of contractual relationships, and that its claims are for breach of those contracts arising from the parties' relationship, in order to invoke this Court's jurisdiction under the Tucker Act.

The Complaint repeatedly alleges a contractual relationship between ISN and the Government. In paragraph 1 of the Complaint, ISN alleges that its June 10, 2003 CDA claim "was for state tax costs incurred for FY 1985-2000 based on revenue derived by ISN from negotiated fixed-price contract[s]." Paragraph 1 further states that the CDA claim dated June 11, 2003 "was for state tax costs incurred for FY 1985-2000 based on loss of profit from cost reimbursement and time and materials contracts resulting from defendant's failure to reimburse state tax cost." The allegation of jurisdiction in paragraph 5 states that jurisdiction is premised upon the Final Decision by the ACO denying ISN's CDA claims. Paragraph 6 states that ISN "provides services and supplies to the various agencies of the Department of Defense and the United States Government . . . ." Paragraph 8 reiterates that "defendant has entered into various contractual relationships with ISN" and then sets forth that "the defendant entered into cost reimbursement, time-and-materials and various negotiated-fixed-price contracts." Paragraph 10 identifies "the various contracts during the FY 1985-2000" as the basis for its loss of profit claim due to the Government's disallowance of state tax costs.

The counts themselves also make repeated reference to the contractual relationship between ISN and the Government. Paragraphs 12 and 13 of Count I state that reimbursement is

sought on revenue derived from ISN's negotiated fixed-price contracts, and these paragraphs reference Exhibits B through E of the Complaint, which further denote the existence of ISN's contracts with the Government. Count II is also expressly premised on contracts with the Government (¶¶ 18-20), as is ISN's PPA claim in Count III (¶¶ 24, 26). It cannot be doubted that ISN has asserted a contractual relationship with the Government from which it seeks relief, and the Government cannot deny the relationship or that the relief requested is contractual relief derived from the relationship.

The cases cited by the Government do not support its contention that this Court lacks subject matter jurisdiction. The Government's citation to the decision in *W.R. Cooper* only furthers the argument against dismissal. In the contract at issue in that case, it was not clear whether the alleged contract was between the Department of Labor ("DOL") and the general contractor, or between the DOL and the subcontractor ("Cooper"). The Federal Circuit noted, "This contract may have existed between DOL and Cooper, or it may have existed between DOL and the City as a contract intended for Cooper's benefit. Such a contract would have been sufficient to create jurisdiction in the Claims Court under the Tucker Act." 843 F.2d at 1364.

Worse yet is the Government's heavy reliance on its tortured reading of the decision in *Mients*. The *pro se* complaint at issue in *Mients* was authored by an elderly Nebraskan farmer. The crude pleading[5] made a single reference to "Contractual violations and Acts of Discrimination and Reprisal committed by agencies of the United States." 50 Fed. Cl. at 666-67. Other than that, the farmer's complaint vaguely stated that the claim was "for reprisal, discrimination, injury and damages, and unlawful, fraudulent and criminal theft of the claimants [sic] machinery and private property and equipment" related to the loss of his farm and

[5] The Court noted that the plaintiff in *Mients* repeatedly used alternative spellings of his own name in the pleadings submitted to the Court. 50 Fed. Cl at 667, n.2.

equipment. Documents attached to the defendant's motion to dismiss in that case indicated that the farmer had obtained loans from the Farmers Home Administration, and had subsequently defaulted both on the promissory notes and subsequent notes supported by the irrigation equipment located on the land.

This Court dismissed the complaint on the basis that the farmer had not alleged any contractual relationship in the Complaint, but had stated only once that the claims were "contractual." *Id.* at 671. The Court could not discern whether the plaintiff even intended to state a breach of contract claim based upon loan contracts identified in the records attached to the defendant's motion to dismiss. Thus, when the Court indicated that the farmer "must allege a specific contract with the Government," the Court was simply stating the need to allege that a binding contract or contracts existed between the parties, and that the contract or contracts were the basis of the claim. *Id*. The Court further noted that it could not simply infer from the materials submitted by the defendant in the motion papers that the loan agreements were the basis of a breach of contract claim because "[w]ere the court to read a breach of contract claim into the complaint, for example, it would then be compelled to dismiss the complaint for failure to state a claim, as plaintiff has failed to allege any conduct on the part of the Government that amounts to a breach." *Id.* at 671, n.7.

The *Mients* decision is not applicable in this matter. ISN has asserted that its contractual relationship with the Government is the basis of its claims for relief. ISN has described the types of contracts it has entered into with the Government. ISN has also described the conduct constituting a breach of those contracts – the failure to allow reimbursement of state tax costs assessed on the revenue from those contracts. Finally, ISN has set forth the damages it suffered

as a result of the ongoing and repeated breach by the Government of the respective contracts. *See* Compl. at Exhs. B and C.

Equally unavailing is the Government's wishful reliance on *Girling Health Sys., Inc. v. United States*, 949 F.2d 1145 (Fed. Cir. 1991). The Government cites this case for the proposition that dismissal for lack of jurisdiction was proper where the plaintiff failed to plead the element of consideration, "among other things". Def. Brf. at 13. The "other things" the Government neglects to mention are the fact that the complaint stated an implied-in-fact contract theory premised entirely upon the language in IRS Form 2553, whereby an applicant for election of subchapter S filing status "should generally receive a determination within 60 days . . . ." The Form also advised the applicant to "take follow-up action" by corresponding with the Internal Revenue Service if no action was taken on the application with ninety days. The Federal Circuit ruled that, on its face, Form 2553 did not constitute a contractual offer, and thus there was no corresponding acceptance of an offer. The Federal Circuit further held that it was "convinced" that the plaintiff "did not show either the mutuality of intent to contract or the definiteness of terms that would be necessary to support an implied contract." As such, the *Girling* decision merely stands for the proposition that there is no subject matter jurisdiction where the complaint on its face demonstrates that there was no contract.

As a final note, it is disingenuous for the Government to attempt to manufacture a heightened pleading standard requiring the allegation of a specific contract, given the history of the litigation between the parties as it relates both in Fed. Cl. 98-663C, and in the certified claims which form the basis of this case. In the complaint filed in Fed. Cl. 98-663C, ISN made remarkably similar allegations for the purposes of jurisdiction. Pl. A. at 1-19. The allegations were not premised upon individual contracts, but on the Government's administration, audit and

disallowance of state tax cost from ISN's indirect cost rate pool as it related to ISN's numerous contracts with the Government. The Court exercised subject matter jurisdiction over those claims without objection by the Government. The Government never denied the existence of its contractual relationship with ISN in that litigation. This is all the more true given the fact that in its January 20, 2004 letter to the ACO, ISN provided the Government with an extensive list of the exact contracts upon which ISN was stating its June 10 and June 11, 2003 CDA claims. *See* Def. A. at 41-62. The ACO did not challenge the existence of those contracts, and nor should the Government be allowed to so now.

In sum, ISN has properly alleged jurisdiction pursuant to the Tucker Act. The Government has not mounted a factual challenge to the existence of a contractual relationship forming the basis of ISN's claims. As such, the Government's motion to dismiss is unsupportable by the case law and the record, and must be denied.

**B. This Case Should Be Stayed Pending The Results Of The Government's Appeal Of Fed. Cl. No. 98-663C For Judicial Expediency.**

Judge Futey's November 30th Decision allowed ISN as a Subchapter S corporation to recover costs associated with the payment of state income taxes incurred on its corporate income and paid by its stockholder. The Court held that state tax expenditures incurred by ISN on its business activities related to its cost reimbursement and T&M contracts were reimbursable under the FAR. Because the decision arose from cross-motions for partial summary judgment, the Government could not appeal the results. Following a trial on damages that ended on May 12, 2004, the Court entered a second Opinion on July 21, 2004 determining the amount of state income taxes to be reimbursed by the Government for FY 1985-2000. Pl. A. at 36-48. The Government has now appealed to the United States Court of Appeals for the Federal Circuit (No. 04-5151). That appeal will either uphold the entitlement of a subchapter S corporation to

reimbursement of state income taxes or not. If it is not upheld and the Opinion is reversed, the legal predicate for this case – entitlement to reimbursement of state income tax costs under the FAR – will be nullified. Assuming, *arguendo*, the Court has subject matter jurisdiction as previously argued, the Court should not be required to expend further judicial resources until the appeal has been decided.

However, assuming the Court wants to look at the merits of the Complaint on the Government's summary judgment motion, ISN will address the Government's arguments below.

**C. Standard For Summary Judgment.**

The Government alternatively seeks summary judgment on the Complaint notwithstanding the absence of any discovery in this matter and the absence of factual material or affidavits as attachments to its motion aside from the correspondence between ISN and the ACO concerning ISN's CDA claims.[6]

As this Court is well aware, summary judgment may only be entered when there is no genuine issue of material fact after reviewing the record in the light most favorable to the nonmoving party. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *Ralph Larson & Son, Inc. v. United States*, 17 Cl. Ct. 39, 42 (1989).

A court may consider a motion for summary judgment in stages. The initial inquiry should be whether the movant has presented an adequate legal basis for its motion. If not, the Court may simply end its inquiry and deny the motion.

If the movant has established an adequate legal basis for its motion, the Court must then consider whether the opposing party has identified any genuine issues of material fact. A dispute

[6] The Government attaches three inconsequential pages from Ms. Malkani's testimony in Fed. Cl. 98-663C to defendant's appendix. These pages of vague testimony do not concern negotiated fixed price contracts.

over a "material fact" is one "that might affect the outcome of the suit under the governing law," and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The first step is to determine whether the issues raised are truly factual issues, or are issues of law. The second step is to determine what subset of the truly factual issues are material to the decision of the case. The third step is to examine the evidence presented by the parties to determine whether there is any genuine issue concerning any material factual issue. *Ralph Larson & Son*, 17 Cl. Ct. at 43 (describing three steps).

**D. Whether ISN Is Entitled To Payment of State Tax Amounts Attributable To Its Fixed-Price Contracts Is A Combined Issue Of Law And Material Fact.**

The Government does not cite a single case to support its proposition that "ISN assumed the risk that costs not considered recoverable at the time of the contract award, might, at some later date, become recoverable." P. 16. Instead, the Government relies on a series of cases that deal with unanticipated costs arising in the performance of a fixed-price contract. ISN is not alleging unanticipated additional cost. ISN is alleging that had state tax cost been a reimbursable cost <u>at the time</u> it negotiated its fixed price contracts, it would have included this cost in the pricing of the contract.

The Government's reliance on provisions of the FAR are not applicable. The Government selectively cites 48 C.F.R. § 16.202-1 for the proposition that "a firm fixed price contract is not subject to price adjustment based on performance costs." But this provision is dealing with unanticipated costs within the contractor's control, not false applications of the FAR by the Government. As the concluding sentence of § 16-202-1 states, "[The firm-fixed-price-

contract] provides maximum incentive for the contractor to control costs and perform effectively and imposes a minimum administrative burden upon the contracting parties." This provision emphasizes that the goal of fixed price contracts is to minimize the costs of the project. ISN's state tax costs are not the type of costs subject to the minimization by the contractor, and are unrelated to the efficiency of the performance of the contract.

The Government also contends that the ACO is not empowered by 48 C.F.R. §42.302 with the ability to re-price fixed-price contracts. As a preliminary matter, nothing in § 42.302 prohibits the ACO from doing so. In fact, to the extent that ISN's claim could be characterized as a "re-pricing" of its negotiated fixed-price contracts, the FAR provides the ACO with the necessary authority. The FAR permits the ACO to attempt to resolve issues with the contractor, including the option of alternative dispute resolution. 48 C.F.R. § 42.302(10). The FAR also empowers an ACO to make payments on assigned contracts "when prescribed in agency acquisition regulations". 48 C.F.R. § 42.302(13). To the extent that the Government denied payment of ISN's state tax costs on an improper application of the FAR, Judge Futey's November 30th Decision in Fed. Cl. No. 98-663C, if sustained on appeal, empowers the ACO to reimburse the cost that the Government had held was unreimbursable. Moreover, this Court is not constrained by the ACO's asserted limits on his authority.

In a lengthy footnote on pages 18-19 of its brief, the Government argues that ISN could not seek a reformation of the contracts because the failure to compensate ISN for state tax was not a mistake of fact, but a "mistake in judgment." The cases cited by the government belie this position. For example, this is not a case where the contractor made a mistake in judgment based upon underestimates of elements of its anticipated costs. *See, e.g., Bromley Contracting Company, Inc. v. United States*, 794 F.2d 669 (Fed. Cir. 1986). Similarly, this is not a case

where the contractor made a mistake as to whether the contract work was subject to state sales tax. *See Sanders-Midwest, Inc. v. United States*, 15 Cl. Ct. 345, 352 (1988). Rather, this is a case where the Government failed to reimburse a cost that has now been held to be reimbursable under the FAR. ISN should not bear the brunt of the Government's mistake in legal judgment in applying the mandates of the FAR.

**E. ISN's Claim For Additional Profit Based Upon The Failure To Reimburse State Tax Costs Does Not Constitute A "Cost-Plus-A-Percentage of Cost" Contract.**

At pages 19-21 of its brief, the Government makes the specious argument that it is entitled to judgment as a matter of law on ISN's claim for additional profit on the flexibly-priced contracts. The Government contends that ISN "requests that this Court convert ISN's cost-reimbursement and time and materials contracts into cost-plus-a-percentage of cost ("CPPC") contracts." The Government's argument does not address the issue.

The Government has misconstrued the nature of ISN's claim for lost profit, which has nothing to do with the statute prohibiting CPPC contracts, 10 U.S.C. § 2306. "[T]he vice at which the statute is aimed is the increased cost which the contractor might allow to accrue in order to obtain the percentage of the increased cost." *First National Electronic Laboratories, Inc. v. United States*, 148 Ct. Cl. 308, 180 F. Supp. 337, 339 (1960). "The prohibition against [CPPC] contracts protects against exploitation of the government's resources by contractors who might take advantage of the open-ended system by unduly increasing costs – and thus their profits – or might simply enjoy the spur of an incentive to increase costs (deliberately or carelessly) by being unconcerned, profligate or wasteful." *Urban Data Sys., Inc. v. United States*, 699 F.2d 1147, 1152 (Fed. Cir. 1983).

State tax is not the sort of expense that a contractor would attempt to increase in order to gain the prohibited percentage of cost. The tax is an expense that was absorbed by the contract

revenue because it was not reimbursable, thereby reducing the amount of profit from that revenue. Moreover, ISN is claiming that it should be reimbursed the increase in profit because that reimbursement is identical to the reimbursement of state tax costs from the contract under the FAR allowed in Fed. Cl. No. 98-663C.

Finally, the presumed profit margin was calculated and negotiated before a price was determined. For example, in cost reimbursement contracts, the parties "establish an estimate of total cost for the purpose of obligating funds and establishing a ceiling that the contractor may not exceed (except at its own risk) without the approval of the contracting officer." 48 C.F.R. § 16.301-1. A cost-reimbursement contract is "suitable for use only when uncertainties involved in contract performance do not permit costs to be estimated with sufficient accuracy to use any type of fixed contract. 48 C.F.R. § 16.301-2.

There are limitations to cost reimbursement contracts designed to protect the Government. The FAR specifically provides:

> (c) Limitations. No cost-plus-fixed fee contract shall be awarded unless the contracting officer complies with all limitations in 15.404-4(c)(4)(i) and 16.303-3.

48 C.F.R. § 16.306(c).

The cross-referenced provisions give further definition to the legal basis for ISN's claim for lost profits. For example, 48 C.F.R. § 15.404-4(c)(4)(i) determines the maximum fixed fee based upon anticipated profit margin that a contracting officer may agree to.[7] In addition, 48 C.F.R. § 16.301-3 states, in relevant part:

---

[7] The relevant portion of 48 C.F.R. § 15.404-4 provides:

(c) Contracting officer responsibilities.

\- - - -

(4) (i) The contracting officer shall not negotiate a price or fee that exceeds the following statutory limitations, imposed by 10 U.S.C. 2306(e) and 41 U.S.C. 254 (b)"

**16.301-3 Limitations**

(a) A cost-reimbursement contract may be used only when –

(1) The contractor's accounting system is adequate for determining costs applicable to the contract; and

(2) Appropriate Government surveillance during performance will provide reasonable assurance that efficient methods and effective cost controls are used.

A T&M contract is defined as one that "provides for acquiring supplies or services on the basis of -- (1) Direct labor hours at specified fixed rates that include wages, overhead, general and administrative expenses, and profit; and (2) Materials at cost, including, if appropriate, material handling costs as part of material costs." 48 C.F.R. § 16.601(a)(1)& (2). A T&M contract is used "only when it is not possible at the time of placing the contract to estimate accurately the extent or duration of the work or to anticipate costs with any reasonable degree of confidence." 48 C.F.R. § 16.601(b). The FAR provides for extensive monitoring and strict limitations of T&M contracts. *See* 48 C.F.R. § 16.601(b) & (c).[8]

As described above, both cost reimbursement and T&M contracts incorporate a calculation of profit based upon an estimate of costs. Both types of contract include a myriad of protections to ensure that the contractor is not expanding costs. The contracts at issue in Count II of the Complaint are not CPPC contracts, and would not be converted into such by this Court's

---

(A) For experimental, developmental, or research work performed under a cost-plus-fixed-fee contract, the fee shall not exceed 15 percent of the contract's estimated cost, excluding fee.
(B) For architect-engineer services for public works or utilities, the contract price or the estimated cost and fee for production and delivery of designs, plans, drawings, and specifications shall not exceed 6 percent of the estimated cost of construction of the public work or utility, excluding fees.
(C) For other cost-plus-fixed-fee contracts, the fee shall not exceed 10 percent of the contract's estimated cost, excluding fee.

[8] For example, as set forth in 48 C.F.R. § 16.601(b)(1):

*Government surveillance.* A time-and-materials contract provides no positive profit incentive to the contractor for cost control or labor efficiency. Therefore, appropriate Government surveillance of contractor performance is required to give reasonable assurance that efficient methods and effective cost controls are used.

recognition that the fixed fee and/or profit determinations should be adjusted based upon the finding that the reimbursement of state tax costs now makes those contracts more profitable. ISN is not arguing that it should be entitled to a CPPC contract. Rather, ISN is arguing that the price it negotiated on a given contract was determined, in part, by virtue of what the parties understood to be reimbursable costs going into contract negotiations and/or bidding. ISN assumed the risk of loss of profit due to its actual costs being higher than originally estimated. But ISN did not assume the risk that the Government would be found to have violated the FAR. ISN simply asks the Court to put ISN in the position that the parties intended when they negotiated a fixed price by virtue of the omission of a cost ultimately deemed reimbursable by this Court.

**F. The Determination On PPA Interest In The Related Case Is Not Binding.**

The Government argues at page 21of its brief that "ISN is precluded from bringing its PPA claim here because the same general claim currently is being litigated in Fed. Cl. No. 98-663C." (Emphasis added). The Government does not define what it means by "general," and the only plausible meaning could be the PPA claim ISN raised in Fed. Cl. No. 98-663C. But the issue is whether ISN has previously litigated the PPA issue regarding the negotiated fixed-price contracts that are the basis of this case.

There is no dispute that Judge Futey did not allow ISN to litigate any issues regarding its negotiated fixed-price contracts in Fed. Cl. 98-663C. Def. A at 18. That ruling prevented ISN from litigating its PPA claim on the negotiated fixed-price contracts in that case. The PPA claim before Judge Futey only involved the invoices from cost reimbursement and T&M contracts, not negotiated fixed-price contracts. Judge Futey received no evidence regarding the contracts at issue in this case, and made no ruling on PPA interest as it relates to these contracts.

While the Government has not specified the legal basis for its argument that ISN is "precluded" from bring its PPA claim, neither *res judicata* nor collateral estoppel apply. *Res judicata* bars relitigation of the same cause of action between the same parties where there is a prior judgment , while collateral estoppel bars relitigation of a particular issue or determinative fact. *See Black's Law Dictionary*, 1306 (West 1990). The parties have not litigated the issue of ISN's entitlement to PPA interest on its negotiated fixed-price contracts. The Government cannot simultaneously argue: (a) that Judge Futey's ruling on PPA interest on cost reimbursement and T&M contracts is binding in this litigation because it involves the same "general claim" as ISN's claim regarding negotiated fixed-price contracts, and (b) that Judge Futey's determination that ISN's entitlement to reimbursement of state income tax costs on those CPFF and T&M contracts is somehow not binding with regards to the negotiated fixed-price contracts. In short, Judge Futey made no ruling with regard to negotiated fixed-price contracts, and ISN is not precluded from pursuing its claim for PPA interest on the invoices submitted pursuant to those contracts.

**G. There Are Many Genuine Issues of Material Fact At This Stage Of The Litigation Concerning ISN's Claim for PPA Interest.**

For similar reasons, the Government is not entitled to summary judgment on ISN's claim for PPA interest simply by making its conclusory assertion that the amount ISN claims has been "in dispute." It is true that a payment that is in dispute as to "the amount of payment or compliance with the contract" is not subject to PPA interest.[9] However, the mere allegation of the existence of a dispute, or raising a frivolous dispute, is insufficient to deny a contractor its

[9] The Prompt Payment Acts states: "This chapter does not require an interest penalty on a payment that is not made because of a dispute between the head of an agency and a business concern over the amount or compliance with the contract.

31 U.S.C. § 3907(c).

right to interest for late payments under the PPA. *See Sterling Millwrights, Inc. v. United States*, 26 Cl. Ct. 49, 90 n.15 (1992).

There is no factual record at this early stage in this proceeding to support judgment against ISN's PPA claim. There is no evidence of any dispute regarding ISN's compliance with any of the contracts that form the contractual relationship that is the basis of the Complaint. Nor is there any evidence that the amount claimed as state tax is in dispute, or, if the amount is in dispute, whether the dispute is frivolous. In fact, the only basis in the record thus far that the Government has given for not reimbursing ISN for its state tax costs has been the assertion that it is not legally required to do so. The issue of whether a contractor that is organized as an S-corporation may receive reimbursement for its state tax costs was resolved conclusively by the liability decision in *Information Sys. and Networks Corp. v. United States*, 48 Fed. Cl. 265 (2000). There is no factual record to determine whether the Government's refusal to pay the state tax costs in this case, either before or after the liability decision in the related case, has any factual or legal predicate.

The question whether there was and is a good faith dispute regarding payment of ISN's invoices for state tax costs is factually intensive. In order to determine the merits of the defense, the parties require discovery. ISN cannot be expected to prove a negative at this stage in the case – that the Government does not have a good faith dispute over the amount of the state tax claimed or ISN's compliance with particular contracts. The Government must come forward with evidence on this issue in order to prevail on summary judgment, and it has failed to do so. It is not sufficient to simply assert that the matter was in dispute, without any specific evidence regarding the alleged dispute over each of the invoices at issue. Taking the allegations of the

Complaint as true for the purposes of summary judgment, the Government's motion for summary judgment on Count III of the Complaint must be denied.

**H. There Is No Evidence to Suggest That ISN's Claims Are Barred By The Doctrine Of Laches.**

Without any factual support or even having raised the issue by way of an affirmative defense, the Government asks for summary judgment on the basis of the doctrine of laches. The defense of laches proof consists of: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense. *See S.E.R., Jobs For Progress, Inc. v. United States*, 759 F.2d 1, 4 (1985) (reversing administrative ruling that action was barred by laches, and requiring development of specific findings of fact to resolve "the difficult questions raised by the laches defense").

The Government bears the burden of proof on both elements of the defense, and has offered no evidence in conjunction with its premature and unsupported motion for summary judgment.

The Government has not proven that ISN has lacked diligence in bringing its claims. "[T]he mere fact that time has elapsed from the date a cause of action first accrued is not sufficient to bar suit; the delay must be unreasonable and unexcused." *Cornetta v. United States*, 851 F.2d 1372, 1377-78 (Fed. Cir. 1988) (citing *Gava v. United States*, 225 Cl. Ct. 676, 679 n.2 (1980)). In fact, the record demonstrates ISN's diligence in pursuing its claim. First, ISN filed the motion in limine in the Fed Cl. No. 98-663C to include all of these claims in that case. Def. A. at 1-6. The motion was denied. Def. A. at 18. Second, after denial of the motion, ISN filed the CDA claims. Def. A. at 23-33. Third, it filed its action in this Court.

"[D]elay alone does not constitute laches." *Cornetta*, 851 F.2d at 1378 (quoting *Brundage v. United States*, 205 Ct. Cl. 502, 504 F.2d 1382, 1384 (1974)). Even a <u>lengthy</u> delay does not independently satisfy the prejudice prong of the laches test. *Id.* (citing *Tyler v. United*

*States*, 220 Ct. Cl. 387, 600 F.2d 786, 789 (1979)). "The general rule is that laches is an equitable doctrine that must be considered in light of the facts of each case." *Id.* at 1379. The Government bears the burden of proving that it has suffered prejudice, as there is no presumption of prejudice. *Id.* at 1380.

In this instance, the Government has not offered a scintilla of evidence regarding prejudice. The blanket assertions of counsel that locating witnesses and documentary evidence "could prove" to be difficult does not constitute evidence of such prejudice. Moreover, ISN has the burden of proving its claims, and is more likely to be prejudiced by the delay in compiling evidence for trial. Finally, there is no reason to believe that there will be any prejudice. The amounts of state tax paid by ISN are easily discoverable. There has been no indication that the Government will challenge the existence of the contracts or ISN's performance thereof. The only issues are the proof of the state tax paid and proof of invoices having been submitted to the Government reflecting that cost. Therefore, the doctrine of laches is not applicable to bar ISN's claims.

## **CONCLUSION**

For the foregoing reasons, ISN hereby respectfully requests that this Court deny defendant's motion to dismiss plaintiff's complaint for lack of jurisdiction, and deny defendant's motion for summary judgment. ISN further requests that this action be stayed pending the decision of the United States Court of Appeals for the Federal Circuit in Fed. Cir. No. 04-5151.

Respectfully submitted,

__s/ Norman H. Singer_________________

NORMAN H. SINGER, ESQ.
BENJAMIN M. KAHRL, ESQ. (of counsel)
Singer & Associates, P.C.
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
(301) 469-0400

November 12, 2004 Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Plaintiff's Response to Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment was served on counsel for defendant via email pursuant to electronic filing this 12th day of November, 2004.

_s/ Norman H. Singer_______________
Norman H. Singer, Esq.

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.