***************************************************************

**UNITED STATES COURT OF FEDERAL CLAIMS**

***************************************************************

**04-385C**
**(Judge Block)**

**INFORMATION SYSTEMS & NETWORKS CORPORATION,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

***************************************************************

**PLAINTIFF'S APPENDIX OF EXHIBITS IN FURTHERANCE OF ITS OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

***************************************************************

**Norman H. Singer, Esquire**
**Benjamin M. Kahrl, Esquire (of counsel)**
**Singer & Associates, P.C.**
**10411 Motor City Drive**
**Suite 725**
**Bethesda, Maryland 20817**
**(301) 469-0400**

**Attorneys for Plaintiff**

# INDEX TO APPENDIX

Exh. # Page


1. Complaint, Fed. Cl. No. 98-663C ........................................................1

2. November 7, 2002 Order, Fed. Cl. No. 98-663C ....................................20

3. September 17, 2003 Notice of Directly-Related Case, Fed. Cl. No. 98-663C........................................................................ 21

4. September 17, 2003 Motion to Transfer and Suggestion for Consolidation, Fed. Cl. No. 98-663C........................................................................ 24

5. October 2, 2003 Defendant's Response to Plaintiff's Motion to Transfer and Suggestion For Consolidation, Fed. Cl. No. 98-663C ............ 28

6. October 16, 2003 Order, Fed. Cl. No. 98-663C ...................................... 35

7. July 21, 2004 Opinion, Fed. Cl. No. 98-663C.........................................36

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | 98-663 C<br><br>AUG 18 1998 |

## COMPLAINT

Plaintiff, Information Systems & Networks Corporation (hereafter "ISN"), by its undersigned attorneys, as and for its Complaint, alleges as follows, based on personal knowledge as to its own actions and upon information and belief as to the actions of others. For those matters alleged based on ISN's information and belief, such matters are based upon, among other things, the investigation of ISN's attorneys, publicly available documents, and other documents presently available to ISN and its attorneys.

### Nature of Action

ISN brings this action to appeal the Administrative Contracting Officer's ("ACO") Final Decision dated April 16, 1998 in which the ACO asserts a demand against ISN in the amount of $262,515.00. The Government claim for alleged overpayments is based, in part, on the ACO's unilateral determination of ISN's general and administrative (G&A) expense rates for fiscal years 1985 and 1986, as a result of the disallowance of selected state income taxes paid by ISN during these fiscal years. Plaintiff properly included the state income taxes in its general and administrative expense (G&A) rate pool as an allowable cost in accordance with Federal

Acquisition Regulation (FAR) clause 31.205-41. The ACO disallowed the state income taxes, alleging that the costs were not allowable under the relevant FAR provisions, not allocable to Government contracts, nor were the costs a reasonable expense. The ACO thereafter unilaterally reduced ISN's G&A rates for fiscal year 1985 (FY 85) and fiscal year 1986 (FY 86), and asserted the present claim for alleged overpayments made to ISN on its cost reimbursable and T&M contracts during FY 85 and FY 86.

## Background

In November 1994, the Defense Contract Audit Agency (DCAA) issued DCAA Forms 1, Notice of Contract Costs Suspended and/or Disapproved, to ISN against its cost-reimbursement and time-and-materials (T&M) contracts for FY 85 and FY 86.[1] The DCAA disapproved certain state income tax payments alleging that these costs are not allocable to government contracts under the provisions of FAR clause 31.204-4 and FAR clause 52.216-7. In accordance with the direction provided in the Forms 1, ISN appealed the DCAA's determination to the ACO and requested that the ACO issue a final decision with regard to whether the disapproved state income taxes are an allowable cost to be included in ISN's indirect rate pool. By letter dated August 14, 1995, the ACO informed ISN that she agreed with the DCAA determination that the state tax costs identified in the DCAA Forms 1 were not allocable to Government contracts.

ISN thereafter requested, on several occasions, that the ACO issue a contracting officer's Final Decision with regard to the disallowance of state income taxes included in the G&A expense pool for FYs 85-89 and FY 91. Meanwhile, the ACO and ISN conducted negotiations to amicably resolve this issue and establish final G&A rates for FY 85 and FY 86.[2]

---

[1] In May 1995, the DCAA issued DCAA Forms 1 for FY 87, FY 88, FY 89 and FY91, disapproving the inclusion of certain state income tax payments by ISN in its indirect cost pool.

[2] The DCAA also questioned certain costs included in ISN's indirect cost rate pool unrelated to this appeal for the cited fiscal years.

Pl. A. 2

On August 6, 1997, the parties met to discuss the issue of state tax costs as an allowable expense in the G&A pool. The ACO stated that the claimed state income tax costs are not an allowable expense because ISN, as a corporate entity, did not incur any liability or obligation to pay these taxes in its capacity as a Subchapter S corporation. The ACO further explained that if ISN was a Subchapter C corporation, then such status would result in the allowance of all state income tax payments in the G&A expense pool.

This "form over substance" argument is predicated upon the mistaken belief that ISN is not required to pay certain taxes in those states which recognize its election as a Subchapter S corporation. Neither the DCAA nor the ACO acknowledges that ISN and its sole shareholder are the same entity for taxation purposes in states that recognize the Subchapter S election. The state income tax assessments, which are based on the income derived from ISN's business activities within the state, "pass through" the Subchapter S corporation to the sole shareholder who, in turn, makes the required state tax payments on behalf of ISN. ISN has claimed as its allowable costs only those state tax payments by the shareholder which are directly related to ISN's business activities within the state. It is thus the revenue generated by the company in that state which determines the tax to be paid by the shareholder on behalf of ISN, not the personal income of the shareholder. As such, that portion of the state taxes directly attributable to the income produced from the corporation's business activities within the state are allowable, reasonable, and allocable to Government contracts, and should be included as expenses in the G&A rate pool. Contrary to the Government's position, it is irrelevant whether ISN or the shareholder pays the state income tax (or franchise tax or gross receipts tax, as these taxes are also called). The state requires that these taxes be paid; however, under the Subchapter S corporation election, the

state permits the shareholder to pay the income taxes on behalf of the business entity, at a more favorable personal tax rate.

By letter dated August 6, 1997, ISN again requested that the ACO issue a Final Decision on whether certain state income taxes are allowable costs for inclusion in ISN's G&A pool. On October 14, 1997, the ACO provided ISN with a final determination of cost disallowance and unilaterally established the final indirect cost rates for FY 85 and FY 86.[3]

The ACO thereafter issued a "Final Decision on Issue in Controversy and Assertion of Government Claim: State Tax Costs, Fiscal Years 1985 and 1986" by letter dated April 16, 1998. In her Final Decision, the ACO asserted a Government claim against ISN in the amount of $262,515.00 for "unallowable, unallocable and unreasonable claimed costs which have been reimbursed by the Government." It is from this Final Decision that ISN appeals. Moreover, because the ACO has failed to issue a Final Decision within sixty (60) days on certain state income taxes as allowable costs for FY 87, FY 88, FY 89 and FY 91,[4] ISN seeks declaratory judgment for these fiscal years on the basis that the failure to issue a decision constitutes a "deemed denial" from which ISN is entitled to relief.[5]

[3] The unilateral determination by the ACO to establish final indirect cost rates includes not only the disallowance of certain state taxes but also the disallowance of excessive executive compensation, as decided by the Armed Services Board of Contract Appeals. *See*, Appeal of Information Systems & Networks Corporation, ASBCA No. 47849, 97-2 BCA ¶ 29,132 (July 7, 1997). This determination is relevant only to the extent that it impacts the final indirect cost rates which serve as the basis for the Government claim herein.

[4] The ACO's intent as to these and all other fiscal years is revealed in her October 14, 1997 decision: ". . . I hereby determine that all state income taxes assessed by states recognizing ISN's election of Subchapter S status are unallowable costs under Government contracts."

[5] FAR 33.211(g).

## Jurisdiction

1. This Court has jurisdiction in that the present cause of action arises from a Final Decision of the cognizant Contracting Officer ("CO") pursuant to 28 U.S.C. § 1491(a)(1) and (2), the Contract Disputes Act of 1978 (as amended), 41 U.S.C. §§ 601 et seq., and FAR 52.216-7(d)(5). This Court further has jurisdiction to grant declaratory judgment under the provisions of Title 28 U.S.C. § 1491(a)(3) for FYs 87-89 and FY 91 because the cognizant CO has failed to issue a Final Decision within the prescribed time period pursuant to FAR 33.211 and the Contract Disputes Act of 1978 (as amended), 41 U.S.C. §§ 601 et seq..

## The Parties

2. Plaintiff ISN is a small business incorporated under the laws of the State of Maryland and having its corporate headquarters located at 10411 Motor City Drive, Bethesda, Maryland 20817. ISN is an experienced company in the field of computer/telecommunications/ security systems integration engineering and has been since its inception in 1980. ISN provides services and supplies to various agencies of the Department of Defense and the United States Government, as well as commercial clients.

3. Upon information and belief, Defendant is the Government of the United States of America, acting by and through its designated contracting officers and authorized representatives, including the Defense Logistics Agency, Defense Contract Management Command Baltimore, at all relevant times herein.

## Factual Allegations

4. Since its inception in 1980, Plaintiff ISN has elected to be treated as a Subchapter S Corporation under the applicable provisions of the Internal Revenue Code (26 U.S.C § 1362 *et seq.*). In states that recognize the Subchapter S corporation election, the shareholder is required

to file personal income tax returns on behalf of the corporation for income derived from ISN's business activities within the state.[6]

5. As a result, ISN's sole shareholder has paid state income taxes on behalf of ISN in certain states where ISN conducts business. ISN then reimburses the sole corporate shareholder for the amount of state taxes paid that are attributable to the company's business activities and income earned in the state.[7] The income taxes claimed as allowable costs are those paid based solely on the revenues derived from ISN's business transactions within these states.

6. At all times relevant herein, ISN's fiscal year began on October 1st of the cited calendar year, and ends on the 30th day of September in the following year. This fiscal year mirrors the Government fiscal year.

7. On November 1, 1994, after completion of incurred cost audits for certain fiscal years, the Defense Contract Audit Agency (hereafter "DCAA") issued DCAA Forms 1, Defense Contract Audit Agency Notice of Costs Suspended and/or Disapproved, and National Aeronautics and Space Administration ("NASA") Forms 456, National Aeronautics and Space Administration Notice of Contract Costs Suspended and/or Disapproved, for Fiscal Year 1985 ("FY 85") and Fiscal Year 1986 ("FY 86"). The DCAA Forms 1 state that:

> Disapproved costs for [Fiscal Year 1985 and Fiscal Year 1986] represent an accrual of Maryland State Income Taxes which are not allocable to government contracts under DAR 15-201.4 and FAR 31.201-4, Determining allocability. These cost principles state that for a cost to be allocable, it must be chargeable to one or more cost objectives on the basis of relative benefits received or some other equitable relationship. Because Information Systems & Networks Corporation is a Subchapter S Corporation, the income of the Corporation flows to the stockholders who pay tax on their personal tax returns. Therefore, this is a personal tax expense and is not allocable to government contracts. Government contracts do not receive any direct or indirect benefit from these costs.

[6] The tax rates imposed by the various states under the Subchapter S Corporation election are more favorable than the tax rates that would be imposed if ISN were a Subchapter C Corporation.

[7] In those states which do not recognize the Subchapter S corporate election, ISN files a state corporate tax return. The ACO has allowed all state income tax payments where ISN filed a corporate tax return. Thus, these payments are not in dispute nor have they been disapproved by DCAA or disallowed in the G&A pool.

The NASA Forms 456 contain substantially identical language but apply only to NASA contracts. Both the DCAA Forms 1 and NASA Forms 456 are signed by the Government Auditor, Mark S. Moser.

8. For FY 85, the DCAA disapproved costs for accrued Maryland state income taxes in the total amount of $151,367, resulting in a reduction of 1.04 percent (1.04%) of the claimed general and administrative expense ("G&A") rate. The total costs disapproved on ISN's cost-plus-fixed-fee ("CPFF") and time and materials ("T&M") contracts for FY 85 equal $32,265, with a potential government claim in the amount of $14,893.

9. The DCAA disapproved costs for accrued Maryland state income taxes in the total amount of $263,113 for FY 86, resulting in the claimed G&A rate being reduced by 1.31%. The total costs thus disapproved on ISN's individual CPFF and T&M contracts for FY 86 equal $63,388, with a potential government claim of $813.

10. On May 23, 1995, the DCAA issued DCAA Forms 1 which disapproved costs claimed for certain state income taxes paid in FY 87, FY 88, FY 89 and FY 91.

11. The DCAA Forms 1 applicable to FY 87 and FY 88 provide the following basis for the disapproval of certain costs claimed by ISN:

> Disapproved costs for [Fiscal Year 1987 and Fiscal Year 1988] represent an accrual for Maryland State Income Taxes which is not allocable to government contracts under DAR 15-201.4 and FAR 31.201-4, Determining Allocability, as well as FAR 52.216-7, Allowable Cost and Payment.

The auditor further concludes, in part, in the "Discussion of the Issue":

> The stockholders' personal state income taxes are not costs incurred by the contractor, and are therefore not reimbursable.

The DCAA permits an exception to the treatment of state taxes paid and claimed by a Subchapter S Corporation, however, under certain circumstances:

> Finally, we have not disapproved any state tax (whether it is called an income tax, or a franchise tax, or a net worth tax, or a gross receipts tax, etc.) where the contractor provided a copy of the tax return in the name of the firm, showing the amount of the tax. (Underline in original.)

12. The DCAA Forms 1 issued against FY 89 and FY 91 disapproved costs for state income tax payments to Maryland, Ohio, Indiana, Georgia, Virginia (FY 89 only), Rhode Island (FY 91), North Carolina (FY 91), and South Carolina (FY 91), citing the same reasons for this action as in the previous fiscal years.

13. For FY 87, the DCAA disapproved costs for Maryland state income taxes paid in the total amount of $263,113, resulting in a reduction of 0.95% of the claimed G&A rate. The total costs disapproved on ISN's CPFF and T&M contracts for FY 87 equal $60,416, with a potential government claim in the amount of $43,619.

14. The DCAA disapproved costs for Maryland state income taxes paid in the total amount of $204,291 for FY 88, resulting in the claimed G&A rate being reduced by 0.52%. The total costs thus disapproved on ISN's individual CPFF and T&M contracts for FY 88 equal $45,290, with a potential government claim of $33,345.

15. By DCAA Form 1 dated 23 May 1995, the DCAA disapproved FY 89 costs for Maryland, Ohio, Indiana, Georgia, and Virginia state income tax payments in the total amount of $210,164, resulting in a reduction of 0.54% of the claimed G&A rate. The DCAA determination disapproved costs in the total amount of $38,987 on ISN's CPFF and T&M contracts for FY 89, with a potential government claim in the amount of $43,619.

16. For FY 91, the DCAA disapproved costs for Maryland, Ohio, Indiana, Georgia, Rhode Island, North Carolina, and South Carolina state income tax payments in the amount of $282,165, resulting in the claimed G&A rate being reduced by 1.45%. The total costs

disapproved on ISN's individual CPFF and T&M contracts for FY 91 equal $53,706, with a potential government claim of $51,375.

17. By letter dated August 14, 1995, the Administrative Contracting Officer ("ACO"), Ms. Letitia Proctor, advised ISN that she had reviewed the DCAA Forms 1 for fiscal years 1985 through 1989, and fiscal year 1991, and that she agreed with the DCAA's opinion regarding the allocation of state income tax costs to ISN's federal government contracts.

18. ISN thereafter submitted a certified claim in the amount of $294,052 to the ACO as the cognizant contracting officer. The amount claimed is the sum of the costs disapproved by the DCAA against ISN's CPFF and T&M contracts for FYs 85-89 and FY 91. ISN's September 18, 1995 claim letter asserts that the state income tax payments for the referenced fiscal years (1985-1989, inclusive, and 1991) are allowable costs under FAR clause 31.201-4 and FAR clause 31.205-41. ISN further requested that Ms. Proctor issue a contracting officer's final decision on the allowability of the disapproved state income tax costs within sixty days.

19. By letter dated March 28, 1996, ISN again requested that the ACO issue a final decision on the allowability of state income tax costs in its G&A expense pool. The ACO and ISN then entered into various discussions in an attempt to establish the final G&A rates for the relevant fiscal years and close out the applicable CPFF and T&M contracts.

20. On August 6, 1997, the ACO and other Government personnel met with ISN representatives in an effort to resolve the state income tax allowance issue. During this meeting, the ACO again stated that the disapproved state income tax payments are not an allowable expense because ISN incurs no liability or obligation to pay certain state taxes by virtue of its Subchapter S corporation status, and it is therefore not reasonable for ISN to pay such costs.

21. The Government personnel did admit that if ISN were registered as a Subchapter C corporation and filed the required corporate tax returns and made tax payments in its name, the costs would be reasonable and allowable, and allocable to Government contracts. The ACO further advised the ISN representatives that she allowed the state tax payments as costs in those states where ISN filed a corporate tax return and made payment in the corporate name. When questioned about this inconsistent treatment of the state income taxes, the ACO acknowledged that "form prevails over substance" in her determination.

22. At the conclusion of the meeting, ISN verbally requested that the ACO issue a contracting officer's final decision regarding whether the state taxes are allowable expenses to be included in ISN's indirect cost rate pool. ISN confirmed this request in writing by letter to the ACO dated August 6, 1997.

23. On October 14, 1997, the ACO issued a "Determination of Cost Disallowance, and Determination of Final Indirect Cost Rates for Fiscal Years 1985 and 1986." The ACO "determined that certain state income tax expenses included by ISN in its G&A pool are not allowable." For the reasons set forth in her decision, the ACO disallowed Maryland state income tax expenses in the amount of $151,367 in FY 85 and $263,113 in FY 86, which were included by ISN in its G&A cost pool for the cited fiscal years.

24. The ACO made the following specific determinations regarding certain state income tax expenses as to allowability, allocability, and reasonableness:

> ALLOWABILITY: I have determined that certain state income tax expenses included by ISN in its G&A pool are not allowable. It is important to realize that, in making my decision, I have not disallowed any amounts for state tax (e.g. income, franchise, net worth, etc.) where ISN has provided a corporate state tax return IN THE COMPANY'S NAME showing the amount of the tax paid, which ISN has filed with the relevant state's taxing authority, and which is not an informational tax return.

* * *

I have determined that ISN is not required to pay certain state income taxes by virtue of its status as a Subchapter S corporation. In accordance with Subchapter S of the Internal Revenue Code, ISN has elected not to be taxed on net income as a separate entity but to have income passed through and taxed to its shareholder. I have disallowed state income taxes only in states which have recognized ISN's election not to pay corporate taxes. These state income taxes are personal expenses of the stockholder and not corporate expenses. While FAR 31.205-41 does not specifically discuss Subchapter S corporations, the cost principle allows state taxes only if the contractor, be it a Subchapter C corporation, Subchapter S corporation, or other legal entity, is required to pay the taxes. I have determined that ISN neither was nor is required to pay the state income taxes which I am disallowing.

ALLOCABILITY:

* * *

ISN has provided me with no evidence that the state income taxes in question were incurred specifically for any Government contract or that the taxes benefitted [sic] both a Government contract and other work, and can be distributed in reasonable proportion to the benefits received. Therefore, I conclude that the state income taxes are not allocable to Government contracts under either subparagraph (a) or (b) of FAR 31.201-4.

Turning to subparagraph (c) [of FAR 31.201-4], a cost cannot be necessary to the overall operation of ISN's business if ISN is not required to pay the cost. I have determined above that ISN was not required to pay the state income taxes in question. Therefore, I conclude that these state income tax costs are not allocable to Government contracts.

REASONABLENESS: According to FAR 31.201-3, " a cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business." As discussed above, ISN is not required to pay the state income taxes in question. I have concluded that a prudent person, in the conduct of competitive business, would not pay taxes they are not required to pay.

Consequently, I hereby determine that all state income taxes assessed by states recognizing ISN's election of Subchapter S status are unallowable costs under Government contracts. (Emphasis added.)

25. As a result of her determination not to allow certain state income taxes as an expense in the indirect cost rate pool, and because ISN disputed this determination, the ACO unilaterally established the final G&A rates for FY 85 and FY 86. The ACO specifically disallowed the Maryland state income tax expense included by ISN in its G&A pool in the

amount of $151,367 for FY 85, and $263,113 for FY 86. The ACO reduced the total sum of $478,162 from the FY 85 G&A pool, and $609,715 from the FY 86 G&A pool.[8]

26. On March 3, 1998, ISN and the ACO entered into an Agreement for Fringe Benefit and Overhead Rates. The Rate Agreement executed by ISN and the ACO contained the following reservation:

> By signing this Indirect Cost Rate Agreement for FY 1985 and FY 1986, ISN acknowledges that the Agreement does not include, as to entitlement or amounts, any determination or agreement with regard to amounts claimed by ISN for state taxes and executive compensation. ISN recognizes that the amounts claimed for state taxes and executive compensation have been accumulated in its G&A pools, not its overhead and fringe benefit pools. Therefore, these costs do not affect the agreed-to overhead and fringe rates for FY 1985 and FY 1986. ISN reserves its right to contest the Government's disallowance of G&A costs relating to state taxes. ISN further reserves its rights to proceed with its appeal of the ASBCA decision regarding executive compensation.[9]

27. Based on the ACO's "Determination of Cost Disallowance, and Determination of Final Indirect Cost Rates for Fiscal Years 1985 and 1986" and the foregoing Rate Agreement, ISN again requested that the ACO issue a contracting officer's Final Decision.

28. By certified letter dated April 16, 1998, the ACO issued a "Final Decision on Issue in Controversy and Assertion of Government Claim: State Tax Costs, Fiscal Years 1985 and 1986."

> Pursuant to FAR 31.205-41 and FAR 52.233-1 . . . I hereby make the final decision settling the issue in controversy in regard to state income taxes and asserting a claim for $262,515.00 representing unallowable, unallocable and unreasonable claimed costs which have been reimbursed by the Government. In making this claim, I am acting on behalf of the Department of Justice, National Aeronautics and Space Administration, as well as the Department of Defense.

---

[8] These amounts equal the sum of the Maryland state income taxes disallowed for each fiscal year, plus the amounts of executive compensation in excess of the compensation allowed by the ASBCA in its July 7, 1997 decision ($326,795 disallowed for FY 85 and $346,602 disallowed for FY 86).

[9] ISN has elected not to pursue its appeal of the ASBCA decision regarding executive compensation. Information Systems & Networks Corp., ASBCA No. 47849, 97-2 BCA ¶ 29,132. Accordingly, the only issue to be resolved is the allowability of state income taxes, paid on behalf of ISN by its shareholder, in those states that permit a Subchapter S Corporation's taxes to "pass through" and be paid by its stockholders.

The ACO then states that the Government claim is computed based on the final indirect cost rates outlined in the October 14, 1997 Determination of Cost Disallowance, and the Indirect Cost Rate Agreement dated March 3, 1998, "in which final indirect cost rates were agreed upon or established for the [fiscal] years in question [(1985 and 1986)]."

29. The consolidated claim of $262,515.00 for fiscal years 1985 and 1986 equals the difference between the total of all costs billed and paid to ISN and the total allowable direct and indirect costs by contract for each fiscal year. The total allowable indirect costs reflects the final G&A rates established by the ACO for the cited fiscal years after removal from the indirect cost rate pools of both the disallowed state income taxes and the amount of executive compensation in excess of that determined to be allowable by the Armed Services Board of Contract Appeals[10].

30. For FY 1985, the disapproved state income taxes constitute 31.7 percent (31.7%) of the costs disallowed in the indirect cost rate pool; for FY 1986, the disapproved state income taxes constitute 43.2 percent (43.2%) of the disallowed costs in the G&A expense pool. Accordingly, that portion of the government claim attributable to the disallowed state income taxes for FY 1985 is $60,612, and for FY 1986 it is $30,806. This results in a consolidated government claim of $91,418 for FY 85 and FY 86 that is attributable to the disallowed state income taxes only. The remainder of the demand against ISN for overpayment ($171,907) results from the removal of executive compensation expenses in excess of that allowed by the ASBCA from the indirect cost rate pool.

[10] *See*, Appeal of Information Systems & Networks Corporation, ASBCA No. 47849, 97-2 BCA ¶ 29,132 (1997).

**FIRST CLAIM FOR RELIEF**
**(For Declaration That State Income Taxes Paid By Shareholder On Behalf of Subchapter S Corporation Are An Allowable, Allocable And Reasonable Cost)**

31. ISN repeats and re-alleges paragraphs 1 through 30 as if fully set forth herein.

32. The ACO and the DCAA acknowledge that state income taxes paid by a contractor are an allowable and allocable cost under the applicable FAR provisions. The Government further admits that state taxes paid are allowable and allocable costs where Plaintiff filed a state corporate tax return, and payment is made by ISN as the corporate entity.

33. FAR clause 31.205-41 states, in part:

> (a) The following types of costs are allowable:
>
> (1) Federal, State, and local taxes (see Part 29), except as provided in paragraph (b) below that are required to be and are paid or accrued in accordance with generally accepted accounting principles. Fines and penalties are not considered taxes.

(None of the excepted costs which are enumerated and described at FAR clause 31.205(b) are applicable to the present appeal.)

34. The ACO further alleges in the October 14, 1997 "Determination of Cost Disallowance, and Determination of Final Indirect Cost Rates for Fiscal Years 1985 and 1986" that state income tax costs paid by Plaintiff are not an allowable expense because, "[The ACO has] determined that ISN is not required to pay certain state income taxes by virtue of its status as a Subchapter S corporation." The ACO further concludes that the claimed costs are not reasonable under the standard set forth at FAR 31.201-3, "[because] a prudent person, in the conduct of competitive business, would not pay taxes they are not required to pay."

35. The state income taxes claimed by ISN and disallowed by the ACO were required to be paid and were paid. There is no FAR provision that requires a specific entity or segment of an organization to make the actual payment of the taxes.

36. ISN has further claimed as allowable costs only those state income taxes, or the proportionate share thereof, which are allocable to its government contract work under FAR clause 31.201-4 because (a) the taxing state is the place of performance for specific government contracts, or (b) the claimed costs are "necessary to the overall operation of the business."

37. The election of a small business to be a Subchapter S Corporation under the provisions of the Internal Revenue Code means merely that the income of the company flows directly to the shareholder(s) and is reported on the individual income tax return(s) of the shareholder(s). States that recognize the Subchapter S election permit the shareholder to pay the requisite income taxes on behalf of the small business entity at the individual taxpayer rate, rather than the more onerous corporate tax rate. The taxes assessed by these states is based solely on the income generated by the business activities of the Subchapter S Corporation within the state, which income "passes through" to the shareholder(s).

38. In states that recognize the Subchapter S Corporation election, there is no requirement as to how payment of the taxes is to be made. The company may issue payment in its name to the shareholder to be filed with the shareholder's tax return; the corporation may issue payment to the shareholder for the state income taxes which may be endorsed to the state; or the company may reimburse the shareholder for that proportional share of state income taxes attributable and allocable to the company's business revenues within the state. The Subchapter S Corporation is ultimately responsible for payment of the state taxes because it is the business activities of the company, not the shareholder(s), and the revenues generated therefrom which determine the tax liability.

39. ISN is and was required to pay state income taxes in every state for which it claims these costs as an allowable expense in its indirect rate cost pool.

40. This expense is an "ordinary and necessary" cost required for the conduct of Subchapter S Corporation's business or performance of specific contracts within the state. Moreover, because the tax rate is imposed at a lower rate than that which would be assessed against a Subchapter C Corporation, "it does not exceed that which would be incurred by a prudent person in the conduct of competitive business."

41. The Subchapter S Corporation election benefits the Government as well because the state tax costs included in ISN's G&A expense pool are less than those that would be allowed and passed through to the Government if Plaintiff were a Subchapter C Corporation. It is neither reasonable nor prudent for ISN to incur unnecessary costs just because the DCAA and the ACO believe that "form prevails over substance" in the conduct of competitive business. Nor is it reasonable for the Government to require Plaintiff to change its corporate status, and thereby increase the cost of performance to the Government on cost reimbursable and T&M contracts, merely to allow expenses in ISN's indirect rate cost pool that are not otherwise unallowable under the applicable FAR provisions, the Cost Accounting Standards guidelines, and generally accepted accounting principles.

**SECOND CLAIM FOR RELIEF**
**(For Declaratory Judgment That Certain State Income Taxes Paid Should Be Included In Plaintiff ISN's Indirect Cost Rate Pool)**

42. ISN repeats and re-alleges paragraphs 1 through 41 as if fully set forth herein.

43. The ACO has determined that all state taxes assessed by states that recognize ISN's Subchapter S Corporation election are unallowable costs for Government contracts. The ACO stated that such expenses are the personal liability of the shareholder, not an obligation of the company.

44. The Government does not award contracts to the shareholder of ISN as an individual, nor does the shareholder personally perform the contract. The Government awards contracts to ISN and ISN performs the contracts as a business entity – a corporation.

45. The DCAA and ACO have disapproved certain state income taxes as an allowable expense for FY 1989 and FY 1991. These states, which recognize ISN's election as a Subchapter S Corporation, include Ohio, Indiana, Georgia and Virginia in FY 1989, and Ohio, Indiana, Georgia, Rhode Island, North Carolina and South Carolina in FY 1991. The DCAA and ACO have consistently disallowed Maryland state income taxes as an expense to be included in the indirect rate cost pool for all fiscal years audited.

46. The obligation of the shareholder to pay state income taxes to the states of Ohio, Indiana, Georgia, Virginia, Rhode Island, North Carolina and South Carolina arises solely out of the performance of federal government contracts by the Subchapter S Corporation, ISN. And contrary to the ACO's assertion, the liability to pay state income taxes (or franchise, gross receipts or other corporate taxes) does exist, whether or not ISN is recognized as a Subchapter S Corporation, because ISN conducts or performs business within these states. However, the shareholder would not incur any tax liability in these states but for the federal government contract business activity in these states.

47. The state income taxes paid by the shareholder on behalf of ISN is the proximate result of ISN's performance of federal government contract work in these states. The shareholder has no nexus to these states other than ISN's corporate business activity as a federal government contractor. In addition, the shareholder pays the state income taxes on behalf of the corporation at a more favorable tax rate thereby reducing the costs which are reimbursed by the Government under ISN's CPFF and T&M contracts. The state income taxes paid in these states

are therefore directly allocable to Government contracts, reasonable and necessary, and are an allowable expense to be included in ISN's indirect rate cost pool.

48. Again, contrary to the ACO's determination, it is a reasonable and prudent business decision to reduce, to the greatest extent possible, the costs incurred by ISN's business activity, which costs are reimbursed by the Government under ISN's cost-plus-fixed-fee (CPFF) and time and materials (T&M) contracts. It is wholly unreasonable for the Government to assert that ISN should file corporate tax returns in its own name, incur substantially greater costs under the corporate tax rate structure, include these expenses as allowable costs in it indirect rate cost pool, and allow ISN to be reimbursed for these costs at the taxpayers' expense.

**THIRD CLAIM FOR RELIEF**
**(For Attorneys' Fees and Costs)**

49. ISN repeats and re-alleges paragraphs 1 through 48 as if fully set forth herein.

50. ISN is entitled to recover its reasonable attorneys' fees incurred and for such other reasonable and necessary costs expended for the prosecution of this appeal. TAM

WHEREFORE, premises considered, Plaintiff ISN respectfully demands judgment against Defendant:

(A) On its First Claim for Relief in the amount of $91,418.00 plus simple Treasury rate interest accruing from April 16, 1998, pursuant to the Contract Disputes Act; and for declaratory judgment that the state income taxes paid on behalf of ISN by its shareholder in FY 1985 and FY 1986 are allowable and allocable costs to be included in Plaintiff's indirect rate cost pool;

(B) On its Second Claim for Relief for declaratory judgment that state income taxes paid to states that recognize the Subchapter S Corporation election are allocable, reasonable, and allowable expenses to be included in Plaintiff's indirect rate cost pool for all fiscal years where such taxes are paid either by ISN or on its behalf by ISN's shareholder; and

(D) On its Third Claim for Relief for attorneys' fees, costs and expenses in a precise amount to be determined at trial; and for such other relief as this Court may deem proper.

Respectfully submitted,

NORMAN H. SINGER, ESQ.
10411 Motor City Drive
Bethesda, Maryland 20817
(301) 469-0400

Counsel for Plaintiff

OF COUNSEL:

ROBERT M. COZZIE, ESQ.
10411 Motor City Drive
Bethesda, Maryland 20817
(301) 469-0400

# In the United States Court of Federal Claims

**No. 98-663C**

**(Filed November 7, 2002)**

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**INFORMATION SYSTEMS & NETWORKS CORPORATION,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER

Pursuant to the telephonic conference held on November 6, 2002, the following is hereby ordered:

1. Plaintiff's Motion To Amend Complaint, filed September 23, 2002, is ALLOWED.

2. The trial in this case, originally scheduled for the week of January 13, 2003, is now rescheduled for the week of March 24, 2003.

3. The pretrial conference scheduled for Wednesday, December 11, 2002, at 2:30 p.m. is CANCELLED until further order of the court.

4. The parties shall file with the court a revised schedule for pretrial proceedings including the completion of discovery by Monday, November 18, 2002.

IT IS SO ORDERED.

Bohdan A. Futey

**BOHDAN A. FUTEY**
**Judge**

RECEIVED
SEP 17 2003
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | ) | |
| Plaintiff, | ) | No. 98-663C (Judge Futey) |
| v. | ) | 03-2186C |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

NOTICE OF DIRECTLY-RELATED CASE

Comes now the Plaintiff, Information Systems & Networks Corporation, by its undersigned attorneys, and pursuant to RCFC 40.2(a)(3), files this Notice of Directly-Related Case. The action in which this Notice is filed is directly-related to the following other case:

1. Information Systems & Networks Corporation v. The United States of America, Case No. 03-1962(C)(Judge Block) (the "Related Case").

2. The Related Case seeks a judgment for State Income Tax costs incurred on Plaintiff's negotiated fixed-price contracts as well as a judgment for loss of profit due to the non-reimbursement of state income tax costs to plaintiff when due. The Related Case involves the same parties and is based on the

same or similar claims as this action concerning damages sought by plaintiff for reimbursement of state income tax costs.

3. An assignment of the Related Case to the Honorable Judge Futey including a consolidation of the Related Case into this action is likely to conserve judicial resources and promote an efficient determination of the actions.

4. Pursuant to RCFC 40.2(a)(3), this Notice is accompanied by a Motion to Transfer and a Suggestion for Consolidation of the Related Case into this action pursuant to RCFC 42.1.

Dated: September 16, 2003

Respectfully submitted,

SINGER & ASSOCIATES, PC

By: [signature]

NORMAN H. SINGER, Esquire
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
(301) 469-0400/(301) 469-0403 fax

Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing "NOTICE OF DIRECTLY-RELATED CASE" were delivered via Federal Express, prepaid, this 16th day of September to:

David B. Stinson, Esq.
Trial Attorney General
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, DC 20530

NORMAN H. SINGER, Esquire

Pl. A. 23

RECEIVED
SEP 17 2003
OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

INFORMATION SYSTEMS )
& NETWORKS CORPORATION, )
)
Plaintiff, ) No. 98-663C
) (Judge Futey)
v. )
)
THE UNITED STATES, )
)
Defendant. )

03-2186C

MOTION TO TRANSFER AND SUGGESTION FOR CONSOLIDATION

Comes now the Plaintiff, Information Systems & Networks Corporation, by its undersigned attorneys, and pursuant to RCFC 42.1(a) moves to consolidate into this action, the case of Information Systems & Networks Corporation v. The United States of America, Case No. 03-1962C (Judge Block)("the Related Case") and as grounds therefor states as follows:

1. This action involves the reimbursement of state income tax costs incurred by plaintiff's sole stockholder resulting from this Court's Decision of November 30, 2000. The damage portion of this case has been scheduled for trial pursuant to the Pretrial Conference for November 3-7, 2003.

2. During the pendency of this case, plaintiff asserted, inter alia, two elements of damage consisting of state income

tax costs incurred on plaintiff's negotiated fixed-price government contracts and for loss of profit due to non-reimbursement of state income tax costs on a timely basis by defendant. In connection with the first issue, plaintiff filed a Motion in Limine with the Court to present evidence on the negotiated fixed-price contract damage claim. The Motion was denied. With respect to the loss of profit claim, defendant claimed that plaintiff had failed to comply with the Contract Disputes Act before asserting the claim. Accordingly, both claims were withdrawn from this action.

3. On or about June 10 and 11, 2003, plaintiff filed a Contract Disputes Act claim for both the damages based on plaintiff's negotiated fixed-price contracts and its loss of profit claim. More than 60 days after submission of the claims, the cognizant Contracting Officer failed to issue a final decision. Accordingly, plaintiff filed the Related Case, Case No. 03-1962C.

4. Both this action and the Related Case involved common questions of law and fact. With the damage case scheduled to begin on November 3, 2003, consolidating the Related Case with this action would be an expeditious manner of conserving judicial resources regarding the Related Case.

5. Plaintiff claims that no discovery is required in connection with any of the issues raised in the Related Case.

WHEREFORE, the premises considered, plaintiff Information Systems and Networks Corporation requests that the Related Case be consolidated and transferred into this action.

Dated: September 16, 2003

Respectfully submitted,

SINGER & ASSOCIATES, PC

By: [signature]

NORMAN H. SINGER, Esquire
10411 Motor City Drive
Suite 725
Bethesda, Maryland 20817
(301) 469-0400/(301) 469-0403 fax

Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing "MOTION TO TRANSFER AND SUGGESTION FOR CONSOLIDATION" were delivered via Federal Express, prepaid, this 16th day of September to:

David B. Stinson, Esq.
Trial Attorney General
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, DC 20530

NORMAN H. SINGER, Esquire

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| INFORMATION SYSTEMS & NETWORKS, CORPORATION, Plaintiff, v. THE UNITED STATES, Defendant. | No. 98-663C (Judge Futey) |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO TRANSFER AND SUGGESTION FOR CONSOLIDATION

Defendant, the United States, respectfully submits the following response to plaintiff Information Systems and Network Corporation's motion to (1) transfer to the Judge assigned to this case the recently-filed case, Information Systems & Networks, Corporation v. United States, Fed. Cl. No. 03-1962C (Judge Block), and (2) consolidate this case with the recently-filed case, Fed. Cl. No. 03-1962C. As discussed more fully below, we do not oppose plaintiff's motion to transfer the newly-filed case to this Court. However, we respectfully oppose plaintiff's motion to consolidate the two actions.

DEFENDANT'S BRIEF

I. Procedural History

Trial in this case presently is scheduled to commence approximately one month from today - November 3, 2003. The parties have submitted to the Court all pretrial filings required by RCFC Appendix A and the Court has held its pretrial conference. Moreover, in accordance with discussions held during

that pretrial conference, the parties met recently and finalized joint exhibits to be introduced in the upcoming trial. Thus, the issues to be tried are set.

Plaintiff's suggestion to consolidate, filed on September 16, 2003, requests that this Court, in essence, add to the upcoming trial, two additional claims which plaintiff admits were only submitted to the contracting officer in June 2003. Pl. Br. 2. These two claims currently are pending before Judge Block in a separate action filed by plaintiff on August 21, 2003. Information Systems & Networks, Corporation v. United States, Fed. Cl. No. 03-1962C. The Government's response to plaintiff's complaint in that action is due to be filed on October 20, 2003, two weeks before commencement of the trial in this matter.

II. Plaintiff's Motion To Transfer

As noted above, we do not oppose plaintiff's motion to transfer Fed. Cl. No. 03-1962 from Judge Block to this Court. We do not agree with plaintiff that the two actions involve common issues of law. However, we do agree that the cases involve common facts, specifically, the facts set forth in pages 1-4 and 6-7 of plaintiff's recently-filed complaint (Fed. Cl. No. 03-1962). Judicial economy would be served by a transfer of that action to this Court inasmuch as the Court already is familiar with certain of the factual allegations contained in the new complaint.

III. Plaintiff's Suggestion To Consolidate

Pursuant to RCFC 42(a), consolidation of actions is appropriate where the actions involve a common question of law or fact. RCFC 42(a). However, "[t]he appropriateness of consolidating claims depends on whether the interest of judicial economy outweighs the potential for delay, confusion, and prejudice that may result from consolidation." Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993) (citing Bank of Montreal v. Eagle Assocs., 117 F.R.D. 530, 532 (S.D.N.Y. 1987).

There is no legitimate justification for consolidating these two cases. Plaintiff's motion contains the bald assertion that there exists common issues of law between the two cases. Pl. Br. 2. However, plaintiff's brief fails to identify those common issues. While we do not dispute that there are some common facts (noted above), we disagree that the cases share common issues of law requiring their consolidation or that the common facts somehow tip the balance in favor of consolidation.

In its decision upon liability in this case, this Court held that plaintiff, an S corporation, could recover costs associated with the payment of state income taxes incurred on its corporate income. Information Systems and Networks Corp. v. United States, 48 Fed. Cl. 265, 272 (2000). Specifically, the Court held that "state tax expenditures incurred by plaintiff on its business

activities related to its cost-reimbursement contracts with defendant" were "reimbursable under the FAR." Id.

The trial scheduled to commence next month in this case involves only the issue of damages, i.e., the amount of state income tax costs to be included in ISN's General and Administrative cost pool for each of its fiscal years 1985 through 1995, and 1999. In contrast, plaintiff's suggestion to consolidate seeks to add two claims to the upcoming trial that have not yet been litigated and where liability has not yet been determined.

Plaintiff's first claim seeks reimbursement for state taxes related to its fixed price contracts - contracts not involved in the current case. Pl. Br. 1. The contracts involved in this case were plaintiff's cost-reimbursement contracts. Plaintiff's second claim seeks reimbursement for "loss of profit" allegedly incurred because of the Government's alleged late payment of certain invoices submitted by plaintiff to the Government. Id. There simply is no common issue of law that exists between the damages issue that will be decided at trial next month and the two additional claims now being asserted by plaintiff in its recently-filed complaint.

Plaintiff's brief also contains the unsupported allegation that "no discovery is required in connection with any of the issues raised in the Related Case." Pl. Br. 2. Other than this

bald assertion, plaintiff's brief sets forth no discussion establishing why the Government does not need, or is not entitled to, conduct discovery regarding plaintiff's two additional claims. The Government is entitled to discovery on both additional claims. For obvious reasons, proceeding to trial on these claims, at this point in time, would severely prejudice the Government in its ability present its Government's defense to these claims.

In addition, we note that, based upon our review of plaintiff's recently-filed complaint, as well as a review of documents exchanged between plaintiff and the contracting officer concerning plaintiff's claims (many of which plaintiff fails to reference in its recently-filed complaint), it appears that this Court may lack jurisdiction to consider either of the claims asserted by plaintiff.

Trial is scheduled to begin in one month. Consolidation of plaintiff's recently-filed complaint with this case would not serve judicial economy and would severely prejudice the Government's defense of plaintiff's claims at trial. Consolidation of the two cases, at best, would require a delay of the upcoming trial, so as to allow the Government the time necessary to litigate as appropriate the issues raised by plaintiff's new action.

CONCLUSION

For these reasons, defendant respectfully requests that plaintiff's suggestion to consolidate be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

Mark A. Melnick / MATE K

MARK A. MELNICK
Assistant Director

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0290
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

GREGORY T. ALLEN
Trial Attorney

RAYMOND J.M. WONG
Trial Attorney
Defense Contract
Management Agency
Manassas, Virginia

October 2, 2003

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 2nd day of OCTOBER 2003, I caused to be sent VIA United States mail (first-class, postage prepaid) copies of "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO TRANSFER AND SUGGESTION FOR CONSOLIDATION" addressed as follows:

NORMAN H. SINGER
Singer & Associates
10411 Motor City Drive
Suite 725
Bethesda, Maryland 28017

# In the United States Court of Federal Claims

**No. 98-663C**

**(Filed October 16, 2003)**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * * | |
| **INFORMATION SYSTEMS & NETWORKS CORPORATION,** | * * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| **Defendant.** | * |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * | |

**ORDER**

Pursuant to the telephonic conference held on this date on plaintiff's Motion To Transfer And Suggestion For Consolidation, filed September 17, 2003, and defendant's response filed thereto, the following is hereby ordered:

1. Plaintiff's Motion To Transfer And Suggestion For Consolidation is DENIED.

2. Trial in this case shall proceed on November 3, 2003, in accordance with the court's order of May 14, 2003.

IT IS SO ORDERED.

Bohdan A. Futey

**BOHDAN A. FUTEY**
**Judge**

# In the United States Court of Federal Claims

**No. 98-663C**

**(Filed July 21, 2004)**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * | * |
| **INFORMATION SYSTEMS &** | * |
| **NETWORKS CORPORATION,** | * |
| | * |
| **Plaintiff,** | * |
| | * |
| **v.** | * |
| | * |
| **THE UNITED STATES,** | * |
| | * |
| **Defendant.** | * |
| | * |
| * * * * * * * * * * * * * * * * * * * * * | * |

*Norman H. Singer*, Bethesda, Maryland, attorney of record for plaintiff.

*David B. Stinson*, Department of Justice, Washington, D.C., with whom was *Assistant Attorney General Peter D. Keisler*, for defendant. *David M. Cohen*, Director, and *Mark A. Melnick*, Assistant Director.

## OPINION

*Futey*, Judge.

This case comes before the court following a trial on damages that ended on May 12, 2004. The trial began on November 4, 2003, but was postponed after plaintiff, Information Systems & Networks Corporation (ISN or plaintiff), rested its case on November 6, 2004. At that time the parties requested a postponement "for an appropriate time to allow the parties an opportunity to pursue settlement negotiations . . . ."[1] The request was granted when the parties indicated that, despite several years of inconclusive past negotiations, there was a "strong likelihood that [the parties could] indeed reach an agreement"[2] on the amount of damages in light

---

[1] Trial Transcript (Tr.) at 903.

[2] *Id.*

of plaintiff's presentation of its case in chief. Nevertheless, no settlement was reached and the court resumed the trial on May 11, 2004. In lieu of closing arguments, the parties requested post-trial briefing, which was completed on June 14, 2004.

This case began on August 18, 1998 when plaintiff filed its complaint seeking a declaratory judgment stating that (1) payment of state income taxes by its sole shareholder on behalf of plaintiff, a Subchapter S corporation, is a reimbursable, allowable cost under the Federal Acquisition Regulations (FAR); and (2) such payment should be allowed to be included in plaintiff's indirect rate cost pool for the contracts performed by plaintiff for defendant. The fiscal years (FY) 1985-1991 were included in plaintiff's complaint. Attorney fees, costs and expenses were also requested.

On November 30, 2000, the court issued an opinion granting plaintiff's summary judgment motion on liability. The court held that 48 C.F.R. § 31.205-41 allows an S-corporation to recover costs associated with the payment by shareholders of state taxes incurred on its corporate income. Believing it to be a relatively simple matter of calculation, the court directed the parties to "file a joint stipulation as to the amount of taxes to be reimbursed in accordance with this ruling no later than December 28, 2000."[3]

After more than a year passed without the parties able to agree on the amount of damages, however, the court set a date for a trial on damages. Discovery related delays resulted in postponement of the trial. On February 27, 2003, plaintiff was permitted to amend its complaint to add the FYs 1992-2000 to its original claim for state income tax costs. At trial, therefore, the matter before the court was to determine the proper amount, allowable under its contracts, of state income tax costs to be included in plaintiff's indirect rate cost pool for the FYs 1985-2000.

## Factual Background [4]

Plaintiff is a corporation organized under Subchapter S of the Internal Revenue Code (IRC), 26 U.S.C. §§ 1361-1379. "S-corporations," as they are popularly termed, are corporations with fewer than 75 shareholders. In fact, during the years 1985-2000 plaintiff's sole shareholder was Mrs. Roma Malkani. Plaintiff's

---

[3] ***Information Sys. & Networks Corp. v. United States***, 48 Fed. Cl. 265, 272 (2000).

[4] The factual background of this case was detailed in the court's previous opinion and only a brief statement of facts relevant to the judgment below is included here. ***Id.*** at 266-67.

income during the years at issue in this case was derived from cost-reimbursement and time-and-materials contracts. The court has held previously that those contracts permitted plaintiff to recover the costs associated with the payment of state income taxes incurred on its cost-reimbursement contracts with defendant. The tax liability of plaintiff, as an S-corporation, was passed-through and paid as a personal tax obligation by its sole shareholder. In its previous opinion, the court recognized the existence of an agreement between plaintiff and its sole shareholder to reimburse the shareholder for the payment of taxes on plaintiff's corporate income. In addition, in some years it is alleged that plaintiff made a payment directly to the taxing authorities for taxes on behalf of its sole shareholder.

A brief description of the process by which contractors are paid by the government on cost-reimbursement contracts is helpful to understanding the context of this case. The contracts establish rates for performance and the contractor is paid for such performance, up to a cost ceiling. 48 C.F.R. § 16.301-1. Costs may fall into two categories: direct costs, including material, labor, and equipment, and indirect costs, including taxes, rental space, insurance, and other administrative expenses. Once performance is complete, a contractor is paid for its indirect costs by requesting reimbursement for them via an "indirect rate proposal." The proposal requests that the costs be included in a "rate pool." The government audits the proposals, determining whether the costs stated by the contractor are allowable under the contract, and ultimately pays the contractor for its allowable costs according to the rates established by the contract.

The dispute giving rise to this case began when plaintiff submitted a rate proposal for FYs 1985 and 1986, including a request for state income tax expense to be included in its general and administrative expense rate pool. The Defense Contract Audit Agency issued audit reports on plaintiff's proposals and disapproved the amounts claimed for state income tax expense as expenses not allowable under the contracts. Plaintiff subsequently submitted rate proposals, including a request for state income tax expenses, for each year up to and including 2000.

The dispute continued until April 16, 1998, when a final decision was issued by the contracting officer (CO) denying plaintiff's claims for state income tax expenses in FYs 1985 and 1986. State income tax expenses for the additional years of plaintiff's claim were also denied or deemed denied by the date of plaintiff's amended complaint. In 2001, plaintiff executed final indirect rate agreements with defendant for FYs 1996, 1997, and 1998. As a consequence, the rates have been settled for those years, including any component of those rates that may be attributed to state income tax expense. The record also shows that in FYs 1989, 1991, and 2000, plaintiff operated at a loss and no state income tax was due.[5]

---

[5] Defendant's Contentions Of Law And Fact at 6-10.

The primary concern during trial, therefore, was to determine the amount of state income tax costs to be included in plaintiff's general and administrative rate pool for FYs 1985 through 2000. Attempts by the parties to settle this issue without a trial on damages were frustrated because the method by which that determination should be made was disputed. Determining the primary issue, therefore, requires the court to consider: (1) the proper method to be used to determine plaintiff's allowable state tax cost; (2) whether plaintiff is entitled to Contract Disputes Act interest; (3) whether plaintiff is entitled to Prompt Payment Act interest. In addition, the court will consider an argument made by plaintiff at trial that monetary relief would now be a more appropriate remedy than declaratory judgment.

## Discussion

At the outset, the court notes that plaintiff's alleged damages in the years 1996, 1997, and1998 have been settled as part of a final indirect rate agreement with the government and, therefore, are not part of the remedy in this case.

### I. Allowable State Tax Cost

As in any contract action, plaintiff has the burden of proving "the amount of loss with sufficient certainty so that the determination of the amount of damages will be more than mere speculation." ***Lisbon Contractors, Inc. v. United States***, 828 F.2d 759, 767 (Fed. Cir. 1987) (quotation omitted); see also ***Bluebonnet Sav. Bank, FSB v. United States***, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (stating that damages may be shown with "reasonable approximation"). "If a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery." ***Locke v. United States***, 151 Ct. Cl. 262, 267 (1960).

Plaintiff attempted to prove its damages using an approach that purports to determine the state taxes that would have been paid, but for the breach, and subtracts out any income tax credits or reductions to those taxes attributable to the sole shareholder's non-ISN related activities. Plaintiff further calculates the alleged damages two ways: first, using ISN's actual tax returns and supporting cash-basis corporate income statements and, second, using pro forma income statements calculated on an accrual basis. Plaintiff alleges that the accrual basis, which is how it tracked its profit and loss for management purposes, is a more accurate measure of damages than the cash-basis statements used to file its actual tax returns. An argument has been made by plaintiff that this measure is appropriate because plaintiff's "sole shareholder was forced to alter her tax accounting in order to minimize the adverse impact of the defendant's failure to reimburse the tax cost."[6] No evidence was presented at trial, however, to support this allegation.

---

6 Plaintiff's Post-Trial Brief (Pl.'s Brief) at 5.

Defendant avers, however, arguing that "[r]ather than prove its damages through use of its cash-basis state income tax returns filed with the taxing authorities, plaintiff now seeks to impose a methodology that simply projects what plaintiff's state income taxes would have been had plaintiff filed its returns on an accrual basis."[7] Further, defendant argues that the court's previous opinion, as the law of the case, and 48 C.F.R. § 31.205-41(b)(7), mandate the use of tax costs set forth in plaintiff's actual tax returns. In opposition to plaintiff's model, defendant presented the amount of Maryland state income taxes paid in each year of plaintiff's claim by its sole shareholder and argued that the damages are best calculated by determining what percentage of those taxes is attributable to plaintiff. The two models are presented in more detail below.

A. Plaintiff's Damages Models

Plaintiff's two alternative damages models were presented by Charles Bonnucelli, plaintiff's Chief Financial Officer. Plaintiff argues that its accrual methodology is appropriate because it operated on an accrual-basis, and had independent audits performed each year on its accrual-basis financial statements. In addition, plaintiff asserts that were it a corporation organized under Subchapter C of the IRC, it would be obligated to use an accrual methodology to compute its tax liability. Finally, it argues that a remedy using cash-basis accounting for damages will not be accurate. Since plaintiff's cash revenue is not equal to the annual accrued earnings, the cash-basis tax cost cannot be accurately apportioned to the total cost of the contracts, which has allegedly been heretofore stated in accrual-basis terms.

Mr. Bonnucelli, therefore, reviewed plaintiff's audited financial, accrual-basis financial statements for each year of its claim. He then created pro forma Maryland state tax returns for the income shown on those statements, as if plaintiff paid its own state taxes on its revenue each year. The effect of creating such a statement is to separate plaintiff's sole shareholder's unrelated activities from the but-for tax liability of plaintiff. The resulting state tax liability was multiplied by the contractually established participation rates[8] and is described by plaintiff as its allowable state tax costs. Using this method, the damages alleged by plaintiff total $1,941,816.[9]

---

7 Defendant's Post-Trial Brief (Def.'s Brief) at 10.

8 See Exhibit 100A.

9 There are significant discrepancies between damages estimated by plaintiff in its complaint, in its expert reports, and during trial by its experts. Nevertheless, setting aside calculation errors and shifting bases for its claim, this is the amount plaintiff alleges to have been proved at trial by its accrual damages model.

In the alternative, Mr. Bonnucelli offered a cash-basis approach to plaintiff's damages. He recalculated plaintiff's actual financial statements to derive a cash-basis net income for plaintiff for each year of its claim. Next, he used that income to prepare pro forma Maryland state tax returns, again separating from its taxable activities any of plaintiff's sole shareholder's activities unrelated to plaintiff's business. Finally, he multiplied the resulting tax liability by the contractually established participation, resulting in $1,154,171 in alleged damages. The damages alleged by plaintiff exclude interest which may be due under the Contract Disputes Act (CDA) or Prompt Payment Act (PPA), which is addressed separately.

B. Defendant's Damages Model

Defendant's model was created and presented by its expert Mr. Glenn Gulden.[10] Mr. Gulden stated that he developed his model in accordance with what he believed to be the mandate of 48 C.F.R. § 31.205-41(b)(7), which states that income tax "differences between taxable income and pretax income as reflected by the books of account and financial statements" are not allowable as reimbursable costs under a contract.

Mr. Gulden, therefore, reviewed plaintiff's sole shareholder's Maryland and federal tax returns to determine the amount of taxes actually paid in each year of the claim. Once determined, he turned to plaintiff's federal corporate tax form 1120S for each year of the claim to determine how much income was distributed each year from plaintiff to its sole shareholder.

Using those two figures, Mr. Gulden calculated the ratio of plaintiff's income to the sole shareholder's total income, which included income and losses of her husband and unrelated activities. The years in which the sole shareholder's net tax liability was negative were excluded from his damages calculation on the premise that no tax was "incurred" on any activity, including the business activity of plaintiff, by the sole shareholder in those years. Mr. Gulden, therefore, arrived at a ratio of plaintiff's income to the sole shareholder's income by dividing plaintiff's income by the income shown on the sole shareholder's Maryland tax returns for years in which Maryland tax was paid.

The allowable state tax costs permitted under the contract were determined by Mr. Gulden by multiplying this ratio by the sole shareholder's state tax cost for FYs 1985-2000. Mr. Gulden's calculation for fiscal year FY 1985 will serve to illustrate his model:

---

[10] Mr. Gulden is the Chairperson of the Cost Principles Committee of the Defense Acquisition Regulation Council.

In 1985, plaintiff's sole shareholder's total income for Maryland state tax purposes was $913,983. Of this amount, $164,367 was listed as earnings from plaintiff's operations, as verified by plaintiff's IRS Form 1120S. Mr. Gulden determined, therefore, that in FY 1985, plaintiff's income was 18% of its sole shareholder's total income. In that year, plaintiff's sole shareholder paid $28,975 in Maryland state income tax. Mr. Gulden multiplied the state income tax by 18% to arrive at $5,216 in allowable state tax cost expense to be reimbursed under the contract.

Mr. Gulden performed similar calculations for FY 1985- 2000, arriving at a total allowable state tax cost expense of $1,133,176.[11] No damages are included in Mr. Gulden's analysis for FY 1989, 1991, 1996-1998, or 2000, either because the final indirect rates have been settled for those years between the parties, or because plaintiff declared no net earnings for income tax purposes.

C. Analysis of the Parties' Damages Models

Plaintiff's most basic objection to defendant's damages model is that the model begins with an allegedly "distorted basis." In particular,

> [Mr. Gulden] included in [plaintiff's sole shareholder's total] income number *all* income from any sources, i.e., [plaintiff's] income, the stockholder's income, her husband's income, their gains, their other income. He *excluded* all offsets to the income, such as deductions and losses. He then calculated the alleged percentage of [plaintiff's] income to all the other income and used that percentage against the state tax paid on the return.[12]

Plaintiff argues that such a calculation unjustly benefits defendant, stating that "there is no reason why [plaintiff] should be prejudiced by the fact that its stockholder and her husband had substantial positive income and deductions thereby reducing the state tax paid through the stockholder personal returns."[13]

Indeed, the theme of plaintiff's own experts and its models is to demonstrate plaintiff's hypothetical tax liability: to show what plaintiff would have had to pay

---

11 Defendant's Exhibit 389 (Gulden's Expert Report), Schedule at 1.

12 Pl.'s Brief at 17.

13 *Id.* at 18.

in state tax had its income not passed-through to its sole shareholder and received the benefit of any losses or credits she was entitled to as a result of unrelated activities.

Defendant argues, however, that its model is the only one consistent with the court's previous finding that "[t]here is no question that the taxes have been paid, nor that the reimbursement sought by plaintiff is meant precisely to cover that payment." ***Information Sys.***, 48 Fed. Cl. at 271. To be consistent with the court's focus on actual taxes paid, and their reimbursement by plaintiff, defendant contends that it is necessary to establish plaintiff's reimbursement only in the context of its sole shareholder's total tax liability. It correctly asserts that "[r]ather than prove its damages through use of its cash-basis state income tax returns filed with the taxing authorities, plaintiff now seeks to impose a methodology that simply projects what plaintiff's state income taxes would have been had plaintiff filed its returns on an accrual basis."[14]

Defendant asserts that its interpretation of the contract, the court's previous opinion, and the equities of the claim are all supported by the FAR, particularly 48 C.F.R. § 31.205-41(b)(7). That provision makes unallowable for reimbursement any "[i]ncome tax accruals designed to account for the tax effects of differences between taxable income and pretax income as reflected by the books of account and financial statements."

Defendant's interpretation of this provision is that it "limits the reimbursement for state income tax to the amount actually paid to the taxing authority."[15] As a consequence, defendant alleges that "[t]o the extent that [plaintiff's] claimed state income tax costs (attributable to the income passed-through to its shareholder) exceed the costs actually paid on that income by the shareholder, those costs are unallowable."[16]

The dispute over damages in this case can be reduced to this controversy: plaintiff believes it is entitled under its contracts to recover the amount of state taxes it would have incurred had it been a C-corporation or an entity which paid its taxes directly without the co-mingling of corporate and shareholder income and losses inherent in an S-corporation's tax liability. Defendant counters that since plaintiff is in fact an S-corporation, which passes its income through to its shareholder, the taxes plaintiff has actually incurred are necessarily offset by the unrelated activities of the shareholder.

---

[14] Def.'s Brief at 10.

[15] *Id.* at 12.

[16] *Id.*

The fact is that plaintiff is an S-corporation. The taxes actually paid on its income cannot be determined without regard to its form, or the effect of its shareholder's unrelated activities. If for instance, plaintiff incurred losses in a particular year, those losses would not only make plaintiff's tax liability zero, they would generate a benefit for the sole shareholder. Losses from plaintiff could be used to offset taxes due on plaintiff's unrelated income within certain limitations. Plaintiff chose the form of its business and with it came benefits to its shareholder. Equity does not appear on the side of plaintiff if it elects to choose the characteristics of an S-corporation when it brings tax benefits, but seeks to disclaim those same characteristics when they have the effect of reducing its damages claim.

This case, however, will not be decided on equity. The court is persuaded that pursuant to the holding of the previous opinion and the FAR, plaintiff's allowable state tax costs must be calculated using actual tax returns, as filed on a cash-basis. Further, the court deems defendant's damages model to be the appropriate one in light of 48 C.F.R. § 31.205-41(b)(3), which states that the following types of costs are unallowable:

> Taxes from which exemptions are available to the contractor directly, or available to the contractor based on an exemption afforded the Government . . . . The term *exemption* means freedom from taxation in whole or in part and includes a tax abatement or reduction resulting from mode of assessment, method of calculation, or otherwise.

Plaintiff's S-corporation status allows for its taxes to be reduced from what might otherwise be due as a result of credits, deductions, or losses available to the sole shareholder who is ultimately liable for paying plaintiff's taxes. Those offsets are exemptions which are available to the "contractor directly." The offsets arise as a result of the mode of assessing income taxes on an S-corporation. Despite plaintiff's claim that offsetting its "but-for" taxes by the exemptions available to the sole shareholder on the basis of unrelated activities is inappropriate, this method is in fact consistent with the FAR.

Defendant's expert may not have provided the only possible measure of damages suffered by plaintiff, but because it is based on actual tax returns and reflects taxes actually incurred and paid by plaintiff or its shareholder, the model does provide reasonable certainty. Plaintiff, therefore, is entitled to include its state tax costs in the amount of $1,133,178 in its indirect rate cost pools between FY 1985-2000.

II. Monetary Versus Declaratory Judgment

Plaintiff now argues that monetary relief is the only form of relief equitable to remedy defendant's breach. It alleges that,

> assuming *arguendo*, that this Court were to award only declaratory relief, [plaintiff] would then be entitled to file a CDA claim for the monetary amount of its damages resulting from the declaratory relief in this case. If the contracting officer did not agree with [plaintiff's] position, then [plaintiff] would have to again file suit in this Court for a money judgment in the amount of its state tax damages resulting from the declaratory judgment.[17]

By contrast, defendant argues that its breach was the failure to permit plaintiff to include state income tax costs as part of the indirect rate pool for the years included in this action. The appropriate remedy, it contends, is to declare that the state tax costs, as determined by the court, be included in the general and administrative rate pool for the years in which they occurred. These expenses can then be used to determine the final indirect rates to be paid under the contract.

In addition, defendant correctly notes that plaintiff's action initially sought declaratory relief, which was an assumption of the litigation on liability.[18] Even plaintiff's expert, Mr. Michael Smigocki, assumed a remedy of declaratory relief, in which a declared amount of state tax costs would be used to support interim billings by plaintiff or provide a basis for the final settlement of its contracts.[19]

Plaintiff suggests that declaratory relief would violate the terms of Title 31 U.S.C. § 1341(a)(1)(A), which prohibits defendant from making contractual obligations in excess of "amount[s] available in an appropriation . . . ." Plaintiff argues that if funds are not available under current appropriations or unable to be

---

17 Plaintiff's Response To Defendant's Post-Trial Brief at 16.

18 See ***Information Sys.***, 48 Fed. Cl. at 267 (stating that "[p]laintiff asks for declaratory judgment in this case").

19 Mr. Smigocki stated his understanding that "[o]nce this case is ultimately decided and the amount of taxes that are going to go into [plaintiff's] incurred cost submissions are finalized here, then [plaintiff] is going to be in a position to be able to bill the government for the final contracts, be able to collect the retentions, but that's going to be occurring sometime in the future here." Tr. at 85.

apportioned for contracts relating back to performance in 1985, defendant could not lawfully comply with the judgment. This argument is unavailing, however, because any judgment, whether declaratory or monetary in nature, would ultimately have to be paid by the agencies from whom it is due. See 28 U.S.C. § 2817. Plaintiff cites no authority, and the court is not persuaded, that defendant would have any less capacity to comply with a declaratory judgment than a monetary judgment.

Finally, the court regards a monetary judgment to be inappropriate in this case because there remains a dispute between plaintiff and defendant as to other costs not litigated in this case, but related to the same contracts. Final settlement of the contracts requires an agreement on all costs. A monetary judgment would be an incomplete remedy, which would require payment by defendant for some costs under the contracts, interrupting the FAR-mandated procedure for final settlement. Further, were plaintiff to be paid for its state tax costs independent of its other costs, or without regard to interim payments that have already been made, the remedy may cause defendant to pay a price for performance in excess of cost ceilings defined by the contracts at issue. The proper remedy in this case, therefore, is the one demanded by plaintiff at the outset:[20] a declaratory judgment that certain state income tax costs be included in its indirect rate cost pool.

III. CDA Interest

Plaintiff argues that since defendant improperly denied payment for state tax costs, plaintiff is entitled to interest on these "amounts found due," pursuant to the Contract Disputes Act of 1978, 41 U.S.C. § 611. Section 611 states,

> [i]nterest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim . . . from the contractor until payment thereof. The interest provided for in this section shall be paid at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41 (85 Stat. 97) . . . .

Plaintiff cites ***Raytheon Co. v. United States***, 305 F.3d 1354 (Fed. Cir. 2002) for the premise that it is due interest on its state tax costs from the date it filed a claim with the CO for those amounts, namely September 18, 1995.[21] It is not enough, however, that a claim be filed for the costs, for interest to be paid under the CDA. The statute requires interest to be paid on "amounts found due." In ***Raytheon***, the

---

20 Amended Complaint at 21.

21 Joint Stipulation of Fact ¶ 21.

United States Court of Appeals for the Federal Circuit (Federal Circuit) noted that the Armed Services Board of Contract Appeals (Board) estimated certain contract costs, upon which the plaintiff demanded interest. The Federal Circuit denied the interest, finding that the plaintiff would "not be paid that amount [determined by the Board]; instead, that number will help establish how much money, if any, is due to Raytheon pursuant to the contract's termination for convenience clause." ***Id.*** at 1365.

The present case is similar insofar as the declaratory judgment establishes the amount of state tax costs allowable under the contract. The entire amount, however, may or may not be due. As defendant summarized, "the Court's decision only establishes the amount of taxes that should be placed in [plaintiff's] G&A pool . . . . How much of the tax amount determined by the Court actually is paid plaintiff depends upon the terms of the contracts . . . and the prior amounts already paid [plaintiff] through its interim billings."[22]

The judgment in this case does not establish an "amount due" and, therefore, section 611 of the CDA is inapplicable. This action only determines the proper amount of allowable state tax costs to be allocated to plaintiff's G&A indirect rate pools for the years and contracts disputed between the parties. No CDA interest can be awarded, therefore, on this type of judgment.

IV. PPA Interest

Plaintiff also asserts it is entitled to interest under the Prompt Payment Act, 31 U.S.C. § 3901, for unpaid amounts of state income tax costs on invoices submitted under the contracts at issue. The statute, however, specifically states that

> this chapter does not require an interest penalty on a payment that is not made because of a dispute between the head of an agency and a business concern over the amount of payment or compliance with the contract.

31 U.S.C. § 3907(c).

There is no question that the amounts on which plaintiff seeks interest have been in dispute. Plaintiff is, therefore, not entitled to interest under the PPA.

---

22 Def.'s Brief at 17.

## Conclusion

For the above-stated reasons, the Clerk of the Court is directed to issue judgment in favor of plaintiff DECLARING that the Maryland state income taxes paid by plaintiff's sole shareholder on behalf of plaintiff are an allowable, allocable, and reasonable cost, which shall be included in plaintiff's G&A indirect rate pools for the following FYs and in the amounts shown:

| | |
|---|---|
| 1985 | $5,216 |
| 1986 | $40,730 |
| 1987 | $37,717 |
| 1988 | $78,409 |
| 1989 | $0 |
| 1990 | $441,914 |
| 1991 | $0 |
| 1992 | $251,634 |
| 1993 | $8,670 |
| 1994 | $67,978 |
| 1995 | $117,109 |
| 1999 | $83,799 |
| 2000 | $0 |

No state income tax costs are relevant for the years 1996-1998 because the rates pertaining to these years have been settled by the parties. Plaintiff's claim for attorney fees and costs is DENIED without prejudice at this time. Plaintiff may file its brief requesting attorney fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. All other pending motions in this case are hereby MOOT. No costs.

IT IS SO ORDERED.

**BOHDAN A. FUTEY**
**Judge**