# In The United States Court of Federal Claims

**No: 04-385 C**
**March 31, 2005**

---

| | |
|---|---|
| **INFORMATION SYSTEMS & NETWORKS CORPORATION,** *Plaintiff,* v. **THE UNITED STATES,** *Defendant*. | Cost-Reimbursement Type Contracts; Fixed-Price Contracts; Allowable Costs; Reimbursement; State Income Tax Costs; "Lost Profits"; Prompt Payment Act; Cost-Plus-Percentage-of-Cost Type Contracts; 41 U.S.C. § 254(b); 10 U.S.C. § 2306; *Res Judicata* |

---

*Norman H. Singer*, Singer & Associates, P.C., Bethesda, MD, for the plaintiff.

*David B. Stinson*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for the defendant.

## OPINION AND ORDER

**Block, *Judge*.**

### I. Introduction

Plaintiff, Information Systems & Networks Corporation ("ISN"), brings this claim under the Contract Disputes Act to challenge the "final decision" of an Administrative Contracting Officer. The final decision denied ISN's claims for reimbursement of state income tax payments, lost profits and recovery of Prompt Payment Act interest. All of ISN's claims relate to various negotiated fixed-price contracts[1] or negotiated cost-reimbursement contracts[2] from the years 1985 to 2000. All of

---

[1] *See* 48 C.F.R. § 16.202-1 ("A firm-fixed-price contract provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract.").

[2] *See* 48 C.F.R. § 16.301-1 ("Cost-reimbursement types of contracts provide for payment of allowable incurred costs, to the extent prescribed in the contract. These contracts establish an estimate of total cost for the purpose of obligating funds . . . .").

these claims, or at least ISN's legal arguments, relate to the earlier opinion of this court in *Information Systems & Networks Corp. v. United States*, 48 Fed. Cl. 265 (2000) (hereinafter *Information I*). That decision determined that plaintiff's state income tax costs were reimbursable expenses that the government should pay under ISN's various cost-reimbursement contracts. ISN now argues that, based on the rule of *Information I*, it is similarly entitled to reimbursement of state income tax payments for its negotiated *fixed-price* contracts. ISN also argues that it is entitled to "lost profits" on its cost-reimbursement contracts that were suffered because the government improperly estimated the costs of ISN's performance. Finally, ISN argues that it is entitled to Prompt Payment Act interest on all of its contracts.

The government has filed a motion to dismiss for lack of subject matter jurisdiction or, in the alternative, summary judgment on the merits of ISN's claims. Based on the record before the court, subject matter jurisdiction in this court is proper and defendant's motion to dismiss will therefore be denied. However, it is clear that based on the relevant undisputed facts defendant is entitled to judgment as a matter of law on each of ISN's claims. Accordingly, the government's motion for summary judgment will be granted.

## II. Background

ISN is a Subchapter S Corporation[3] that provides computer, telecommunication, and security systems integration engineering services. Compl. at ¶ 6. ISN has provided services to defendant under numerous contracts since its inception in 1980. *Id.*

In 1998, ISN sued the government under the Contract Disputes Act in a case closely related to this one. In that action, this court considered whether state taxes paid by the shareholder of an S corporation were reimbursable costs under cost-reimbursement type contracts (including "cost-plus-fixed-fee" type contracts and "time and materials" type contracts). *See Information I*, 48 Fed. Cl. at 272. ISN argued that the state income tax costs it incurred performing the cost-reimbursement contracts should have been classified as allowable, allocable expenses by the contracting officer, and demanded reimbursement of those expenses pursuant to its contracts. ISN contended that an S corporation should be treated the same as any other "commercial organization" under the Federal Acquisition Regulations ("FAR") provisions covering reimbursable costs. *Id.* at 269; *see generally* 48 C.F.R. Subpart 31.2. Defendant countered that because the shareholder, rather than the S corporation itself, paid the state taxes,[4] ISN was not entitled to reimbursement of those costs. *Information I*, 48 Fed. Cl. at 269.

---

[3] A corporation organized under Subchapter S of the Internal Revenue Code ("IRC"), 26 U.S.C. §§ 1361-79 (1994 & Supp. V. 1999).

[4] Subchapter S corporations are not directly liable for taxation on their income; "the corporation's income is 'passed through' to the shareholders, and is attributed to the shareholders' personal income tax liability in pro rata amounts." *Information I*, 48 Fed. Cl. at 266 (citing 26 U.S.C. § 1366). The taxes at issue in *Information I* were paid to states that had adopted the IRC approach to Subchapter S corporations. *Id.*

*Information I* concluded that even though the S corporation itself did not pay the state taxes, the tax liability was merely shifted to the S corporation's shareholder, rather than falling within any applicable exemption that relieved the tax liability altogether. *Id.* at 269-70. Therefore, such taxation fit under the express terms of 48 C.F.R. § 31.205-41, which provides that taxes "that are required to be paid and are paid" are allowable expenses. *Id.* According to the court, the fact that nothing in the relevant FAR provisions indicated that S corporations should be treated differently than other commercial organizations supported this conclusion. *Id.* Thus, the court concluded that ISN was entitled to reimbursement for state tax costs incurred performing its cost-reimbursement contracts. *Id.* at 272.

In June 2003, ISN precipitated the current case by filing two Contract Disputes Act claims with the Defense Contract Management Agency ("DCMA"), asserting three grounds of recovery based on the rule of *Information I*. *See* Def.'s App. at 23, 29. First, ISN demanded reimbursement of state tax costs incurred performing various *fixed-price* contracts from 1985-2000. *See id.* at 23. That claim sought to extend *Information I*'s rule regarding cost-reimbursement type contracts to fixed-price contracts as well. *See id.* According to ISN, such relief was appropriate because "there is no difference between a negotiated Government fixed-price contract and a cost-reimbursable or time-and-materials contract." *Id.* at 24. Second, ISN demanded lost profits on its cost-reimbursement contracts, stemming from the contracting officer's initial failure to classify state tax costs as reimbursable expenses (which had been rectified by *Information I*). *See id.* at 31. ISN argued that it would have been entitled to a proportionally higher fixed-fee or profit margin if state taxes had been considered reimbursable at the time those contracts were negotiated. *See id.* Finally, ISN demanded interest under the Prompt Payment Act ("PPA"), 31 U.S.C. § 3901-07, for both its cost-reimbursement contract and fixed-price contract claims. *See id.* at 26, 31.

ISN's CDA claim failed to identify the individual contracts on which its claims were based. In August and again in December 2003, the DCMA Administrative Contracting Officer ("ACO") requested that ISN identify particular contracts or contractual terms that formed the basis of its claims. *Id.* at 34-37. On January 20, 2004, ISN submitted to the ACO a list several pages long of contract numbers and other identifying information for the contracts upon which it based its claims. *See id.* at 39-62.

On March 3, 2004, the ACO issued its final decision, denying each of ISN's claims. *See* Compl. Ex. A. The ACO concluded that *Information I* did not apply to fixed-price contracts and that, more generally, the rules related to cost reimbursement were irrelevant to fixed-price contracts. *See id.* The ACO also concluded that ISN's lost profits claim was in effect an argument that its cost-reimbursement contracts were cost-plus-a-percentage-of-cost contracts that are prohibited under 10 U.S.C. § 2306. *See id.* Finally, the ACO denied the PPA claims, stating that it lacked authority over the claims related to the cost-reimbursement contracts (which had been raised in the *Information I* litigation) and that ISN had failed to provide documentation regarding the claims related to the fixed-price contracts. *See id.*

On March 11, 2004, ISN filed its complaint in this court seeking review of the ACO's final decision. ISN's complaint raises the same claims it referred to the ACO in June 2003, that (a) *Information I* applies to ISN's fixed-price contracts, (b) ISN is entitled to lost profits damages related

to its cost-reimbursement contracts, and (c) ISN is entitled to interest for invoices allegedly not paid in accordance with the PPA. Compl. at ¶¶ 11-26. ISN also seeks attorney's fees. *Id.* at 27-30.

On July 17, 2004, defendant filed a composite motion to dismiss for lack of subject matter jurisdiction or motion for summary judgment. Defendant argues that the court lacks subject matter jurisdiction because plaintiff has not identified a specific contract or contracts on which its claims are based. In the alternative, defendant argues that it is entitled to summary judgment, because *Information I* does not apply to plaintiff's *fixed-price* contracts and plaintiff is not entitled to any "reimbursement" of costs under those contracts. Defendant also argues that plaintiff's "lost profits" claim would give rise to cost-plus-a-percentage-of-cost contracts which are prohibited. *See* 10 U.S.C. § 2306; 41 U.S.C. § 254(b). Finally, defendant argues that the court should deny plaintiff's PPA interest claim in part because it is *res judicata* having been ruled on another case and in part because it must fail as a matter of law since the amounts withheld were "in dispute."

## III. Discussion

### A. Jurisdiction and the Motion to Dismiss

To address a typical motion to dismiss for lack of subject matter jurisdiction, the court considers the allegations in the complaint as true. *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, when a motion to dismiss challenges the jurisdictional facts alleged in the complaint, the court may consider relevant evidence beyond the pleadings to determine whether jurisdiction is proper. *Id.*; *see generally Fisher v. United States*, No. 02-5082 at 13-14, 2005 WL 545195 (Fed. Cir. Mar. 9, 2005). Ultimately, plaintiff must prove by a preponderance of the evidence that the court has subject matter jurisdiction over its claim. *Reynolds*, 846 F.2d at 748. During this review, however, the court does not decide "whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

The Tucker Act confers on this court jurisdiction "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. §1491(a)(1). To facilitate this portion of the court's jurisdiction, the court's rules state that "[i]f the claim is founded upon a contract," the complaint shall include "a description of the contract . . . sufficient to identify it." RCFC 9(h)(3). Moreover, "the plaintiff shall plead the substance of those portions of the contract . . . on which the plaintiff relies, or shall annex to the complaint a copy of the contract . . . indicating the provisions thereof on which the plaintiff relies." *Id.* Defendant argues that, by operation of RCFC 9(h)(3), this court lacks subject matter jurisdiction over plaintiff's claims because plaintiff has failed to plead with specificity a description of the contract or contracts upon which its claim is founded.

It is true that plaintiff's complaint itself is vague and non-specific, referring generally to "contracts," "various contracts," "various contractual relationships," "flexibly priced contracts," and "fixed-price contracts" without identifying any specific contract. Compl. at ¶¶ 8, 10, 18, 20, 24. Similarly, plaintiff has not identified any particular contractual provision upon which it relies for its claims. Plaintiff likewise has not alleged the elements of an express contract. *See City of Cincinnati*, 153 F.3d 1375, 1377 (Fed. Cir. 1998).

The Tucker Act's grant of jurisdiction over "express or implied contract[s] with the United States," however, is not the court's only basis for jurisdiction over this claim. The Tucker Act specifically provides that this court shall have jurisdiction over "any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978." 28 U.S.C. § 1491(a)(2). This includes any "dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act." *Id.* The CDA provisions dovetail with the Tucker Act's jurisdictional grant, providing that where a contracting officer renders a final decision under 41 U.S.C. § 605, "in lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States Court of Federal Claims." Contract Disputes Act of 1978, Pub. L. No. 95-563, 92 Stat. 2383, §10(a)(1) (codified as amended at 41 U.S.C. § 609(a)(1)).

Accordingly, the court is compelled to deny defendant's motion to dismiss for lack of subject matter jurisdiction because the Tucker Act specifically confers jurisdiction on the court to review a contracting officer's final decisions issued pursuant to the CDA. *See* 28 U.S.C. §1491(a)(2); 41 U.S.C. § 609(a)(1)(1987 and Supp. 2004). Since plaintiff has invoked this court's jurisdiction to review a final decision of a contracting officer under the CDA, its failure to specifically identify contracts or contract terms in its complaint is not fatal because its claim is not founded upon a contract, but instead upon an agency action that relates to its contracts. *Compare* RCFC 9(h)(1) *with* RCFC 9(h)(3).

Even if plaintiff were required to specifically identify its contracts in the complaint, the court notes that the plaintiff did submit to the ACO a list containing contract numbers and other information identifying the contracts upon which its CDA claim is based. *See* Def.'s App. at 39-62. Due to plaintiff's references in the complaint to the ACO's review of its CDA claims, and the fact that plaintiff's action seeks review of the ACO's decision, it may be inferred that plaintiff has incorporated by reference into its complaint the list of contract numbers and other information. That list has appeared in the record of this case as an appendix to the defendant's briefs. *See id.* Thus, the parties and the court are able to ascertain that plaintiff's claims are based on numerous specific contracts with defendant executed between 1985 and 2000, as identified in the supplied lists. The requirements of RCFC 9(h)(3) are, at least for the purposes of identifying the contracts at issue in this particular case, therefore satisfied. Accordingly, dismissal for lack of subject matter jurisdiction is improper and defendant's motion will be denied.

**B. Motion for Summary Judgment**

Plaintiff's complaint raises three specific claims related to its various contracts with the government from 1985 until 2000. First, regarding only its fixed-price contracts from that period (which were not considered in *Information I*), plaintiff maintains that the earlier decision of this court established a rule under which plaintiff is entitled to receive a "reimbursement of state tax costs incurred" performing those fixed-price contracts. *See* Pl.'s Resp. to Mot. for Summ. J. at 9; Compl. at 8. Second, with respect to the cost-reimbursement contracts considered in *Information I*, plaintiff argues that since state income tax costs are allowable costs that should have been part of its "general and administrative cost pool" it is entitled to lost profits. Compl. at 10. According to plaintiff, its

negotiated "profit margin" was calculated based on the amount of the plaintiff's estimated allowable costs. *See id.* at 9. Therefore, plaintiff argues that if defendant had properly calculated state income taxes as allowable costs plaintiff would have received a proportionally larger negotiated profit. Finally, plaintiff contends that it is entitled to interest payments under the provisions of the Prompt Payment Act because the defendant allegedly failed to pay invoices in accordance with the law when it did not reimburse plaintiff's state income tax costs.

Defendant filed a motion for summary judgment on each of these three complaints. First, defendant argues that the rule of *Information I* applies exclusively to cost-reimbursement type contracts and that it has no bearing on plaintiff's fixed-price type contracts. Furthermore, defendant argues that the concept of "reimbursement" of specific costs is inconsistent with a "fixed-price" type contract because the contractor in a fixed-price contract does not receive reimbursement for any of its specific costs. Instead, the contractor receives a single pre-determined price for its services and bears the risk of any incurred costs. As for plaintiff's lost profits claim, defendant argues that if profits are to increase incrementally with an increase in allowable costs then plaintiff's claim is inconsistent with the statute that prohibits cost-plus-percentage-of-cost type contracts. *See* 10 U.S.C. § 2306. Finally, defendant argues that plaintiff is entitled to no interest under the PPA because that issue was already considered during the damages phase of *Information I* and because there have been no improperly withheld payments upon which to predicate a PPA claim.

**1. Standard of Review**

Claims for review of a contracting officer's final decision filed pursuant to the CDA are reviewed by this court *de novo*. *See* 41 U.S.C. § 609(a)(1). Under RCFC 56(c), summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *see also Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of demonstrating the "absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 322.

**2. Plaintiff Is Not Entitled to "Reimbursement" of Costs for Fixed-Price Contracts**

Plaintiff's first claim, that it is entitled to "reimbursement" for state income tax payments incurred under its negotiated fixed-price contracts, fails because it is inconsistent with the law of fixed-price contracts. The FAR states that a fixed-price contract "provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience in performing the contract." 48 C.F.R. § 16.202-1. "This contract type places upon the contractor . . . full responsibility for all costs and resulting profit or loss." *Id.* The basic premise of a fixed-price contract is that the contractor is obligated to complete the designated performance for a fixed amount of compensation, regardless of the costs incurred. *See generally* JOHN CIBINIC, JR. & RALPH C. NASH, JR., FORMATION OF GOVERNMENT CONTRACTS 1079 (3rd ed. 1998). Generally, a fixed-price contract is appropriate when the costs of performance can be estimated accurately, limiting the exposure of both parties to unforeseen risks. "A firm-fixed-price contract is suitable for acquiring . . . services . . . when the contracting officer can establish fair and reasonable prices at the outset, such as when . . . [a]vailable cost or pricing information permits realistic estimates of the probable costs of performance." 48 C.F.R. § 16.202-2(c).

Much of plaintiff's argument in this court is underscored by its claim to the ACO that "there is no difference between a negotiated Government fixed-price contract and a cost-reimbursable or time-and-material contract."*See* Def.'s App. at 24. The fact (and indeed, the law) is, however, that these two types of contracts are very different animals that are subject to different procurement rules, involve different allocations of risk, and allocate performance costs in very different ways. The fixed-price type contract must therefore be distinguished from a cost-reimbursement type contract.

In a cost-reimbursement contract, the contractor receives a negotiated fee for its services and is reimbursed for its actual, allowable costs. The two types of cost-reimbursement contracts that plaintiff claims to have employed in this case are "cost-plus-fixed-fee" contracts and "time and materials" contracts. In the former, the parties negotiate a firm fixed-fee that represents the contractor's remuneration above his estimated costs of performance; the contractor is then reimbursed for his actual, allowable costs. *See generally* 48 C.F.R. § 16.306 ("Cost-plus-fixed-fee contracts"). In a time and materials type contract, the contractor provides "supplies or services on the basis of (1) direct labor hours at specified fixed hourly rates that include wages, overhead, general and administrative expenses, and profit and (2) materials at cost." 48 C.F.R. § 16.601. Therefore, in the context of either of these types of contracts, the role of an "allowable expense" is critical because those expenses determine the quantum of the contractor's reimbursable expenses; the government bears the risk and burden of *all* allowable costs. As a result, a cost analysis to determine the scope of the contractor's allowable costs and cost realism analysis to evaluate specific elements of proposed cost information are essential. *See generally* 48 C.F.R. § 15.404-1(c) & (d). Not *all* costs of performance are directly reimbursed by the government (because some costs are not allowable or allocable), and those that are not must be absorbed by the contractor. *See generally* 48 C.F.R. § 15.404-4.

Plaintiff argues that "this is a case where the Government failed to reimburse a cost that has now been held to be reimbursable under the FAR." Pl.'s Memo. in Opp. to Def.'s Mot. to Dismiss at 21. Moreover, plaintiff argues that "[p]ursuant to the Opinion in [*Information I*], the Government is obligated to reimburse ISN for the necessary expenditure ISN makes and has made to ensure the payment of its incurred State Income Taxes by its stockholder on ISN revenue [under its negotiated fixed price contracts]." Def.'s App. at 23. Whether or not an S Corporation's state tax costs are indeed properly construed as allowable costs,[5] plaintiff's argument that they should be the subject of a "reimbursement" in the context of its *fixed-price contracts* is a *non sequitur*.

This is so because in the normal course there is no such thing as "reimbursement" of *any* costs in a fixed-price undertaking. (Otherwise, why would they call it a "fixed-price" contract?) There is simply no general allowance in a fixed-price contract for an adjustment of the negotiated price based on the actual costs of performance, and plaintiff has cited no specific contract provision that would lead to such a result in this case.[6] "[F]irm-fixed-price contracts set a price to the

---

[5] The "rule" of *Information I* is currently before the Federal Circuit on appeal. *See Information I*, No. 98-663, Notice of Appeal (filed Sept. 10, 2004).

[6] Some types of fixed-price contracts may be structured to specifically take into account the contractor's cost experience, but those contracts must have specific contract provisions. *See*

government that is not subject to adjustment based on costs incurred by the contractor; that is, the government [and the contractor are] aware of the total contract price at the time of acceptance." *First Enter. v. United States*, 61 Fed. Cl. 109, 124 n. 23 (2004) (citing 48 C.F.R. § 16.202-1). Unlike the cost-reimbursement type contract in which the government bears the burden of all allowable costs, the burden is shifted entirely to the contractor in a fixed-price contract, and the government bears only the risk of over-estimating project costs (and therefore agreeing to pay an unnecessarily large fixed-price). *See Am. Tel. & Tel. Co. v. United States*, 307 F.3d 1374, 1380-81 (Fed. Cir. 2002) (discussing a host of "risks" that are allocated in a cost-reimbursement type contract versus a fixed-price contract). The fixed-price undertaking is absolutely distinct from the cost-reimbursement type contract, and plaintiff's apparent attempt to muddy or abrogate that distinction is here unavailing.[7]

---

*generally* 48 C.F.R. §§ 16.203, 16.205, 16.206. This situation is here inapplicable. To be sure, plaintiff conceded to the ACO that "[t]here is no specific contract term in the listed fixed-price contracts which permit reimbursement of state income tax costs." Def.'s App. at 66.

[7] Plaintiff's Complaint refers only to "reimbursement" as the remedy plaintiff seeks in this court. *See*, *e.g.*, Compl. at ¶¶ 8, 12, 14; *see also* Pl.'s Memo. at 5, 8, 19-21. On the other hand, construed liberally plaintiff's claim might be read to argue not that it is entitled to a "reimbursement," but rather that the contracts should be reformed to include a higher fixed-price. Such an argument, however, is unavailing. "Reformation serves to bring the parties' written contract in accord with their agreement." *Atlas Corp. v. United States*, 895 F.2d 745, 750 (Fed. Cir. 1990). The premise behind reformation is to ensure that the contract reflects "the true agreement of the parties on which there was a meeting of the minds." *Am. President Lines, Ltd. v. United States*, 821 F.2d 1571, 1582 (Fed. Cir. 1987). In the context of mistake, reformation may be available to the adversely affected party if a "mutual mistake of material fact" can be demonstrated. *See Roseburg* Lumber Co. v. Madigan, 978 F.2d 660, 665 (Fed. Cir. 1992). However, in this case, plaintiff has pointed to no mistake of fact which might give rise to basis for reformation; at least, it did not plead any such mistake with particularity as the court's rules require. *See* RCFC 9(b).

Indeed, the only type of mistake that plaintiff seems to have alleged—that the contracting officer misconstrued state tax costs as non-reimbursable—is really one of law, rather than fact, upon which a reformation action will not lie. Plaintiff's complaint focuses on anticipated costs that were known at the inception of its contracts, namely the state income tax burden it would bear for the contract payments. The flaw, according to plaintiff, is that the contracting officer incorrectly determined those foreseeable costs to be non-"reimbursable" expenses. In connection with the fixed-price negotiations with defendant, plaintiff alleges that defendant disallowed state tax costs as part of plaintiff's "indirect cost rates" upon which the fixed price was partially negotiated. Compl. at 6. "Thus, the revenue from the negotiated fixed-price contracts while creating a state tax liability to the ISN stockholder, was not subsidized by the negotiated fixed-price contract revenue." *Id.* at 6-7. If anything, these facts give rise to a unilateral mistake of law by the contracting officer. There is no indication that a mutual mistake of fact existed, or that the negotiated fixed price contracts did not represent the mutual agreement of both parties. No doubt, plaintiff would have liked to receive a higher price, but that is not an adequate ground for reformation. *See also AT&T*, 307 F.3d at 1381 ("Contract reformation now, after full performance, would impose upon the Navy the full cost of performance at a time when the *quid pro quo* of a cost-reimbursement bargain, *e.g.*, the right to

Ultimately, the shortcoming of plaintiff's argument is a misconstruction of the role of cost principles (including cost-analysis and cost-realism analysis, *see* 48 C.F.R. Pt. 31) in a fixed-price undertaking. Since cost analysis was required for plaintiff's fixed-price contracts, *see* Compl. at 6, plaintiff implicitly argues that every allowable cost must be specifically represented, or recaptured, in its fixed-price contracts.[8] While that may be true in a cost-reimbursement undertaking, it belies the role of cost principles in negotiated fixed-price undertakings.

Cost principles are a necessary predicate to a cost-reimbursement contract because it is imperative for both parties to establish the scope of the undertaking's allowable, allocable costs (*i.e.*, the "reimbursable" costs). *See* 48 C.F.R. § 31.103(b)(1) ("[T]he contracting officer shall incorporate the cost principles and procedures [of subpart 31.2] in contracts with commercial organizations as the basis for [d]etermining reimbursable costs under (I) cost-reimbursement contracts . . . and (ii) the cost-reimbursement portion of time-and-materials contracts . . . ."). This is so because the government must assess the risks it bears from the contractor's performance, and the contractor must know which costs will be reimbursed so that it may evaluate the adequacy of its "profit." *See* 48 C.F.R. § 15.404-4 ("Profit") ("Just as actual costs may vary from estimated costs, the contractor's actual realized profit or fee may vary from negotiated profit or fee, because of such factors as efficiency of performance, incurrence of costs the Government does not recognize as allowable, and the contract type."). In the cost-reimbursement context, proper determination of allowable fees is essential because the contractor is entitled to reimbursement of each of those specific costs. Hence, the significance of the *Information I* decision that concluded state income tax costs incurred by plaintiff under its cost-reimbursement contracts were allowable and, therefore, reimbursable.

Fixed-price type contracts, on the other hand, are a whole different ball game. Even though cost principles may be required in certain fixed-price negotiations, they play a different role than in a cost-reimbursement procurement. FAR section 31.102 is the lynchpin of this distinction:

> [A]pplication of cost principles to fixed-price contracts and subcontracts shall not be construed as a requirement to negotiate agreements on individual elements of cost in arriving at agreement on the total price. The final price accepted by the parties reflects agreement only on the total price. Further, notwithstanding the mandatory use of cost principles, the objective will continue to be to negotiate prices that are fair and reasonable, cost and other factors considered.

48 C.F.R. § 31.102. Unlike cost-reimbursement contracts, the focus of a fixed-price negotiation is on total price, rather than individual costs. While a fixed-price negotiation may rely on cost principles to establish a frame of reference for negotiating the overall price, the goal of the

---

supervise, is moot. Reformation here, simply put, would not further the mutual intent of the parties.").

[8] *See* Def.'s App. at 66 ("[I]t [is] ISN's position that had state income tax costs been properly allowed in a timely manner, ISN would have taken into account the state income tax cost in negotiating the fixed-price contracts.") (Plaintiff's letter to ACO).

negotiation is not to remunerate the contractor for each individual allowable cost. Instead, the goal is to reach a "fair and reasonable" price based upon the universe of costs.

It is this focus on "total price" that allocates the risk in a fixed-price undertaking. When plaintiff entered into its contracts, it bore the risk of the adequacy of that price and that it was "fair and reasonable" in light of all the known costs, whether they be "allowable" or not. Therefore, it would be improper for the court to retroactively redistribute the burden for a *known cost* that was already implicitly factored in to the fairness and reasonableness of the negotiated fixed-price. *See AT&T*, 307 F.3d at 1380-81. In light of these considerations, it is clear to this court that defendant is entitled to summary judgment on Count I of plaintiff's complaint because the relief that Count I seeks, a "reimbursement," is inconsistent with the fixed-price undertaking at issue.

**3. Plaintiff Is Not Entitled to "Lost Profits" on Any Contracts**

Plaintiff's second claim seeks "lost profit" to which it is allegedly entitled under its various cost-reimbursement contracts now that *Information I* has concluded plaintiff should be reimbursed for greater costs. The gist of plaintiff's claim is that its negotiated fixed-fee or "profit margin" for those cost-reimbursement contracts was negotiated based on the estimated reimbursable costs of plaintiff's performance. According to plaintiff, since its allowable costs should have been greater (because they should have included plaintiff's state tax costs), plaintiff is entitled to a proportionally greater fee or profit.[9] However, this argument is untenable because it directly contradicts an express statutory prohibition against cost-plus-percentage-of-cost contracts.

The cost-plus-percentage-of-cost type contract is prohibited by 10 U.S.C. § 2306. *See also* 41 U.S.C. § 254(b) ("The cost-plus-a-percentage-of-cost system of contracting shall not be used."). If the court were to accede to plaintiff's argument, it would have the effect of proportionately increasing plaintiff's fees or profit based solely on a corresponding increase in plaintiff's allowable costs. Such a system of remuneration, however, would plainly violate the express terms of an unambiguous statute. *See Gen. Eng'g & Mach. Works v. O'Keefe*, 991 F.2d 775, 780 (Fed. Cir. 1993) ("Moreover, the payment of material handling costs through both overhead rates and a percentage mark-up would constitute an impermissible cost-plus-percentage-of-cost system of contracting."); *Urban Data Sys., Inc. v. United States*, 699 F.2d 1147 (Fed. Cir. 1983).

Plaintiff tries to escape the clear prohibition on this type of contract by arguing that the policy behind the prohibition is not of concern here. "The vice at which the statute is aimed is the increased cost which the contractor might allow to accrue in order to obtain the percentage of the increased cost." Pl.'s Memo. at 21 (quoting *First Nat'l Elec. Labs., Inc. v. United States*, 180 F. Supp. 337, 339 (Ct. Cl. 1960). However, according to plaintiff, "[s]tate tax is not the sort of expense that a contractor would attempt to increase in order to gain the prohibited percentage of cost." *Id.*

---

[9] *See*, *e.g.*, Compl. at ¶ 18 ("The amount of the allowable and agreed profit on the various ISN [cost-reimbursement] contracts . . . was directly dependent upon all of ISN's costs incurred on the contracts . . . . The agreed upon profit margin, for example, 10%, was then calculated against the <u>total</u> costs of a particular contract. Thus, if a particular contract included state tax costs, the amount of the profit is proportionately greater.").

Nevertheless, "[w]here there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95-96 (1820) (Marshall, C.J.). In other words, whatever policy implications might be served by 10 U.S.C. § 2306, the language of the statute could hardly be any more clear: cost-plus-percentage-of-cost contracts are prohibited. Regardless of the incentive plaintiff did or did not have to increase its costs or incur state income tax costs, § 2306 clearly and plainly prohibits plaintiff from receiving additional fees or profit simply because it incurred greater reimbursable costs. *See Urban Data Sys.*, 699 F.2d at 1151 ("No showing of unfair or inefficient increase in price or costs is necessary in order to render such a contract illegal. The theoretical contravention of the prohibition is adequate to make the arrangement illegal.") (quotation omitted).

Indeed, with respect to plaintiff's cost-reimbursement contracts in which the parties negotiated the amount of plaintiff's fixed fee (in its cost-plus-fixed-fee contracts) or profit margin (in its time and materials contracts) exclusive of allowable costs, plaintiff assumed the risk of the adequacy of those fees and profit. Specifically, plaintiff assumed that risk in light of the anticipated state income tax costs which, at the time, had not been deemed allowable costs and would necessarily be paid by plaintiff, himself, from funds received as the fixed-fee or profit under its various contracts. *See* 48 C.F.R. § 15.404-4(a)(1) ("Profit or fee prenegotiation objectives do not necessarily represent net income to the contractors. Rather, they represent that element of the potential total remuneration that contractors may receive for contract performance over and above allowable costs. . . . Just as actual costs may vary from estimated costs, the contractor's actual realized profit or fee may vary from negotiated profit or fee, because of such factors as efficiency of performance, *incurrence of costs the Government does not recognize as allowable*, and the contract type.") (emphasis added).

If anything, the actual profit that plaintiff recognizes on its cost-reimbursement contracts will increase dollar-for-dollar due to *Information I*, which entitled plaintiff to additional reimbursable costs. Plaintiff implicitly accepted responsibility for those costs at the time of negotiation, but under *Information I* will be relieved of that burden (while still retaining the negotiated fee or profit that was determined based upon plaintiff's assumption of the state tax cost burden). The plain language of § 2306's prohibition on cost-plus-percentage-of-cost type contracts notwithstanding, plaintiff's claim for lost profits on its cost-reimbursement contracts would lead to a windfall.

Accordingly, it is clear to this court that plaintiff is not entitled to any amount of "lost profit" on its cost-reimbursement contracts by virtue of this court's 2000 decision. Defendant is therefore entitled to judgment as a matter of law on this claim.

**4. Plaintiff Is Not Entitled to PPA Interest**

Finally, plaintiff argues that it is entitled to interest payments under the Prompt Payment Act because defendant wrongly withheld payments at the time of invoice. According to plaintiff, those wrongfully withheld payments include the allegedly reimbursable state tax costs and the "lost profit." It is unclear from the Complaint whether these claims are limited to plaintiffs fixed-price contracts or also extend to the cost-reimbursement contracts that were considered during litigation of

*Information I*, but plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment seems to clarify this ambiguity and limits the PPA claim to only the fixed-price contracts. *See* Pl.'s Memo. at 24-25. For completeness, however, the court assumes that it covers both.

First, as for any PPA claim plaintiff might have stemming from improperly withheld state tax cost reimbursements to which plaintiff was entitled under its various cost-reimbursement contracts, such claim is improper in this action because it was fully litigated in plaintiff's earlier claim (that precipitated *Information I*) and is therefore barred by the doctrine of *res judicata*. *See id.* at 24 ("The PPA claim before Judge Futey only involved the invoices from cost reimbursement . . . contracts, not negotiated fixed-price contracts."); Pl.'s Resp. to DPFUF at ¶¶ 3, 4. On the other hand, as for any PPA claim based on plaintiff's current substantive claims, plaintiff is not entitled to any relief because it is not entitled to any "reimbursement" of costs or "lost profits" based on those contracts, as discussed above. Simply, this court concludes that the government did not improperly withhold any invoiced payments, so there is no predicate for a PPA claim.

## IV. Conclusion

Consistent with the court's discussion above, jurisdiction over plaintiff's claim in this court is proper and defendant's motion to dismiss is **DENIED**. Since defendant is entitled to judgment as a matter of law on each of the claims in plaintiff's complaint, defendant's motion for summary judgment is therefore **GRANTED**. The clerk shall enter judgment in favor of defendant.

It is so ordered.

s/*Lawrence J. Block*

**Lawrence J. Block**
**Judge**